UNITED STATES of America,

v.

Edward SCIANDRA, Yale Kroloff, Vincent Foti, Sr. and Peter Cardasis, Defendants.

No. 81 Cr. 776(MEL).

United States District Court, S. D. New York.

Jan. 12, 1982.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; Carolyn H. Henneman, Asst. U. S. Atty., New York City, of counsel.

John Edward Sexton, Steven Alan Reiss, New York City, for defendant Peter Cardasis.

LASKER, District Judge.

Defendant Peter Cardasis ("Cardasis") moves (1) for an *in camera* inspection of the grand jury minutes and dismissal of the indictment if certain evidence is not found therein; (2) to dismiss Count Three of the indictment which charges him with aiding and abetting defendant Edward Sciandra's ("Sciandra") evasion of Sciandra's taxes; (3) to strike alleged prejudicial surplusage from the indictment pursuant to Fed.R. Cr.Pr. 7(d); and (4) for severance of his trial from the trial of his co-defendants, pursuant to Fed.R.Cr.Pr. 14. The motions are disposed of as follows:

(1) Cardasis argues that his attorney informed the prosecutor of three items of exculpatory evidence, and that under the authority of *United States v. Ciambrone*, 601 F.2d 616 (2d Cir. 1979) [1] if the prosecutor thereafter failed to inform the grand jury of such evidence, the indictment must be dismissed. The three items are: (a) that Cardasis did not expect any financial remuneration for his participation in the activities charged; (b) that his actions were known to and approved of by his supervisor; and (c) that certain payments were allegedly legitimate tax deductions.

The government acknowledges having been informed by defense counsel of Cardasis' position on these three matters, (Affidavit of Assistant United States Attorney Carolyn H. Henneman submitted in opposition to the motions) ("Henneman Affidavit"), but also notes that neither Cardasis nor his attorney requested to appear before the Grand Jury, (Henneman Affidavit ¶¶ 2, 3), and, that, in fact, Cardasis refused to appear before the grand jury without a grant of immunity. (*Id.* ¶ 3). Furthermore, the government points out that Cardasis did not request that the informa-

---

1. In *Ciambrone*, the Court of Appeals stated: "[W]here a prosecutor is aware of any substantial evidence negating guilt he should, in the interest of justice, make it known to the grand jury, at least where it might reasonably be expected to lead the jury not to indict." *Id.* at 623.

**322**

tion on which he relies in this motion be presented to the grand jury. (*Id.* ¶ 2). Moreover, the government argues that none of the evidence relied on by Cardasis "negat[es] guilt," *Ciambrone, supra*, and that, therefore, the government was under no duty to present it to the grand jury.

The government's arguments are persuasive. The absence of a pecuniary motive does not negate knowing participation in an illegal scheme to defraud, nor does the fact that one's supervisors may have approved the project. And defense counsel's view of the legality of certain payments is not, without more, exculpatory evidence.

Moreover, it is difficult to see how the prosecutor can be held accountable for failing to present evidence that could not have been put before the grand jury without granting immunity to actual or potential criminal defendants. Both Cardasis and his supervisors refused to testify before the grand jury (Henneman Affidavit ¶¶ 3, 6) and Cardasis does not suggest that other evidence as to his own motivation or the knowledge of his supervisors existed.

Cardasis has failed to demonstrate that the government was obliged to present the information in question to the grand jury. No purpose would therefore be served by inspecting the minutes to determine whether it has done so, and the motion is denied.

■ (2) Count Three charges that Sciandra, aided and abetted by Cardasis, evaded his tax obligations for the year 1980 by "failing to file . . . a personal income tax return, and . . . by concealing and attempting to conceal . . . his true and correct taxable income." (Indictment ¶ 14). Cardasis' argument that he had no fiduciary or other special duty to assure that Sciandra filed a return is beside the point because the statute on which Count Three is based,

26 U.S.C. § 7201, proscribes all willful attempts "by *any* person" to evade or defeat "*any* tax" (emphasis added). In addition, Cardasis' contention that the indictment fails to specify the means by which he allegedly aided in Sciandra's concealment is simply incorrect: the indictment charges that Cardasis facilitated Sciandra's evasion by disguising payments to him (Indictment ¶ 2).[2] Accordingly, the motion to dismiss Count Three is denied.

■ (3) Cardasis lists thirty-six instances of what he refers to as surplusage in the indictment, all of which he moves to strike. Language in an indictment may be stricken if it is irrelevant, inflammatory and prejudicial. *United States v. Claytor*, 52 F.R.D. 360, 361 (S.D.N.Y.1971), *quoting United States v. Klein*, 124 F.Supp. 476, 479–80 (S.D.N.Y.1954), *aff'd*, 247 F.2d 908 (2d Cir.), *cert. denied*, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). With two exceptions, the Court is left to speculate on Cardasis' reasons for finding the words complained of to be irrelevant, inflammatory, and prejudicial. Our speculation has not been fruitful. In each instance, the language appears to be either relevant, or if irrelevant, then innocuous.

With respect to the two instances in which the feared prejudice is specified, the repetitious description of "false, fictitious and fraudulent" invoices or documentation and the allegedly inflammatory description of the transactions as "sham[s]," the government's argument that such descriptions are not only relevant but are, in fact, the gist of the case, is entirely convincing. The motion to strike is therefore denied.

■ (4) Cardasis moves to sever his trial from that of his co-defendants. First, he contends that he will be a victim of a "spill-

---

2. Paragraph nine of the indictment states:

"The principle means by which the defendants and their co-conspirators would and did carry out the conspiracy was to fraudulently create the appearance, through false, fictitious and fraudulent documentation and otherwise, of legitimate and actual business transactions in the editing and mounting of University 8 8mm film—which services in

fact were never rendered—for the purpose of disguising cash payoffs to the defendant EDWARD SCIANDRA. These sham transactions would in turn be treated as purportedly tax deductible costs of goods and services sold, specifically deductions reflecting the cost of outside labor, and would provide the means of generating and transferring unreported cash to the defendant SCIANDRA."

over" of sentiment about his co-defendants who are alleged to be connected to organized crime. However, severance will not preclude this possibility because evidence of Sciandra's connections to organized crime will either be admissible at both trials or at neither. The government contends that such evidence is relevant to explaining why Cardasis went to such elaborate efforts to disguise his payments to Sciandra. In any event, the motion is premature, since there is no clear indication at this time that spillover adverse to Cardasis will occur.

The second ground of Cardasis' motion for severance is the potential deprivation of exculpatory testimony which Cardasis intimates would come from his co-defendants if he were tried separately. Cardasis states:

"testimony from one of the co-defendants' to the effect that Peter Cardasis was ... not a part of the illegal components of the scheme would be extremely valuable to the defense. Defense counsel has no reason to believe that such testimony would not be forthcoming... However, joinder ... would effectively preclude such testimony."

(Defendant's Brief at 21). The assertion is insufficient. No affidavit supports it. The statement is contained only in defendant's brief, refers only to his counsel as a source, states only that his counsel has "reason to believe" and does not even specify the reason for the "belief."

Among the factors to be considered in determining whether to grant a severance motion are "the sufficiency of the showing that the co-defendant would testify at a severed trial," "the degree to which the exculpatory testimony would be cumulative," and "the likelihood that the testimony would be subject to substantial, damaging impeachment." *United States v. Finkelstein*, 526 F.2d 517, 523–24 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). In view of Cardasis' failure to set forth the basis, if any, for his suggestion that his co-defendants might exculpate him at a severed trial, or the content of such testimony, if given,

he has not carried "the difficult burden of demonstrating sufficient prejudice to ... warrant[ ] severance." *Id.* at 525.

Finally, Cardasis moves for severance on the grounds that his defense will be "antagonistic" to the defenses of his co-defendants because "he will defend his conduct as being lawful, while conceding that [his co-defendants] may have engaged in illegality." (Defendant's Brief at 22). However, he does not explain why such a defense on his part would be adverse to his co-defendants, nor how he can "concede" their culpability. The mere possibility of a conflict, which does not, on the basis of the defendant's description of it, appear to be irreconcilable, does not entitle a defendant to a separate trial. *See, e.g., United States v. Davis*, 623 F.2d 188, 194 (1st Cir. 1980) ("to obtain severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that the defenses are irreconcilable").

Accordingly, defendant Cardasis' motions are denied.

It is so ordered.