**UNITED STATES of America,**

v.

**Vander L. BEATTY, Defendant.**

**No. 83 Crim. 543.**

United States District Court,
E.D. New York.

May 25, 1984.

Asst. U.S. Atty. Marion Bachrach, E.D. N.Y., Brooklyn, N.Y., for U.S.

Ramsey Clark, Lawrence W. Schilling, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendant is charged in an indictment containing sixteen counts as follows: Mail Fraud in Counts 1–14 (18 U.S.C. §§ 1341 and 2); Racketeering in Count 15 (18 U.S.C. §§ 1962(c), 1963 and 2); Obstruction of Justice in Count 16 (18 U.S.C. §§ 1503 and 2). He has moved for an order pursuant to Rules 7, 8 and 12 dismissing Counts 1–14 and Count 15 in their entirety and Count 16 in part or severing a portion of Count 16; for an order pursuant to Rules 6(e)(3)(C)(i) and (ii) releasing to defendant in whole or in part the minutes of the Grand Jury that indicted him and of any other federal grand jury to which his case was presented; for an order pursuant to Rule 7(d) striking surplusage from the indictment and for an order pursuant to Rule 12(f) extending his time to make formal discovery motions. His motions will be addressed in that order.

I.

A. *Motion to Dismiss Counts 1–14.*

In support of his motion to dismiss these counts the defendant correctly recognizes that mail fraud consists of two elements: (1) a scheme or artifice to defraud, and (2) use of the mails for the purpose of executing the scheme. 18 U.S.C. § 1341; *Pereira v. U.S.*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). He concedes that the indictment adequately charges the first element, but contends that it fails to adequately charge the second. In sum, he

contends that the use of the mails must be part of the execution of the fraud; must be incident to an essential part of the scheme and sufficiently related to the furtherance of the scheme. The mailings charged here, he argues, do not (with the possible exception of the mailing charged in Count 7), satisfy that requirement but are instead routine transmittals or notifications from and to banks, government agencies and the Bedford Stuyvesant Urban Development Corporation (BSUDC), which are not in any way false or fraudulent. He relies primarily on *Parr v. U.S.*, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960) and *U.S. v. Tarnopol*, 561 F.2d 466 (3rd Cir.1977).

The defendants charged with violating and conspiracy to violate the Mail Fraud Act (18 U.S.C. § 1341) in *Parr* were nine individuals and two banks who, together, controlled the Benavides Independent School District (the District), a public body created under Texas law. That body administered the public schools within a defined geographic area. They were charged with looting the District of some $200,000 through their control of the District's fiscal affairs. Under Texas law, the District was empowered to assess and collect an ad valorem property tax which was to be used exclusively for the maintenance of the public schools. The defendants were charged with devising a scheme to defraud by appropriating the taxes collected to their own benefit and with using the mails to execute the scheme in that the notices and collections incident to the taxing process were sent by mail.

In reversing the convictions of the defendants of mail fraud, the Supreme Court framed the issue as being whether the legally compelled mailings of the lawful letters, tax statements, checks and receipts complained of in those counts could properly be said to have been for the purpose of executing a scheme to defraud because the defendants, who were legally compelled to cause the mailings, planned to steal part of the receipts. 363 U.S. at 389, 80 S.Ct. at 1182. After recognizing the uniqueness of the factual situation, the court concluded that "mailings made or caused to be made

under the imperative command of duty imposed by state law" cannot be said to be "criminal under the federal mail fraud statute, even though some of those who are so required to do the mailing for the District plan to steal, when or after received, some indefinite part of its moneys." 363 U.S. at 391, 80 S.Ct. at 1184. Considerations of mailings as being "routine" or "innocent" were not alluded to or mentioned by the Court.

In *Tarnopol*, the mailings relied upon by the government were packing slips sent by the manufacturer of phonograph records to the corporation ordering them to confirm the fact that the records were shipped to their intended recipients. The defendants, officers of the corporate purchasers, used those slips to differentiate sales properly reflected on the corporate books from sales to be included in their fraudulent scheme. In reversing the conviction of the defendants, the court said that the mailing of the packing slips was "a routine business procedure which was uniformly followed in the case of all sales, whether or not they were involved in the scheme to defraud." 561 F.2d at 472. "The procedure was itself intrinsically devoid of any element of fraud and, indeed, it or its equivalent would appear to have been necessary in the conduct of legitimate business" by the corporate purchasers with the record manufacturers. *Id.* "No distinction was made in this practice between sales subsequently entered on the books and those which became involved in the scheme to defraud." *Id.* The execution of the fraudulent scheme did not begin until after the packing slips were received and the mailing of those slips were thus deemed too remote to be in furtherance of the scheme.

■ Neither *Parr* nor *Tarnopol* is applicable here. The indictment in this case, in essence, charges the defendant with causing the BSUDC to be incorporated for the purpose of obtaining monies from governmental agencies, which monies were then unlawfully diverted to his own use and to the use of others. The indictment further

charges the defendant with concealing those unlawful uses. The mailings charged in Counts 1–14 are alleged in the indictment to be for the purpose of executing the defendant's scheme to defraud. Given the charge in this indictment that the BSUDC was created for the very purpose of obtaining money to be misappropriated, it can hardly be said the alleged mailings to execute that purpose were "made or caused to be made under the imperative command of duty imposed by law" as in *Parr*. Nor can it be said as in *Tarnopol* that the procedures (which included mailings) leading to the ultimate misappropriation of corporate funds were devoid of any element of fraud. The mail fraud counts in the indictment allege procedures and mailings which are instinct with fraud with each step in the process being an integral part of the whole. *See, e.g., United States v. Elkin*, 731 F.2d 1005 (2d Cir., 1984); *United States v. Hasenstab*, 575 F.2d 1035 (2d Cir.) *cert. denied*, 439 U.S. 827, 99 S.Ct. 100, 58 L.Ed.2d 120 (1978); and *United States v. Brown*, 583 F.2d 659 (3rd Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), where the court also observed, at 668 that "the relation of the mailing to the fraud is a question of fact." [1]

■ The defendant's motion aimed at Counts 1–14 also requests that the government be directed "to re-charge the mail fraud in one count, or possibly more, but in any event in far less than 14 ..." although conceding that "mailings can be set forth in separate counts" as reflected in Form 3 which supplements the Federal Rules of Criminal Procedure (Defendant's Memorandum of Law, pp. 16–17). At another place in his Memorandum of Law (p. 9) the defendant also concedes that "conceptually, it

can be said that the gist of the crime of mail fraud is use of the mails ... and that each mailing is a separate offense even if there is but one scheme to defraud." The defendant correctly states the law in this regard and his objection to the multiple counts of mail fraud charged in the indictment, therefore, has no merit. *Badders v. United States*, 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706 (1916).

For the foregoing reasons, the defendant's motion addressed to Counts 1–14 is denied.

### B. *Motion to Dismiss Count 15*

■ The defendant moves to dismiss Count 15 for the reason that it fails to charge two or more predicate acts as required by 18 U.S.C. § 1961 and that the acts charged are not acts of racketeering activity required as predicate acts.

Count 15 of the indictment accuses the defendant of four acts of racketeering activity. Each act is alleged to be in violation of the mail fraud statute and each act relates to a different contract entered into between BSUDC and the State of New York by virtue of which BSUDC received sums of money in varying amounts from the State of New York. The first act of racketeering of which he is accused consists of four separate mailings relating to a 1979 contract between the BSUDC and the State of New York for funding through the New York State Supplemental Budget.

The second act of racketeering of which he is accused consists of two separate mailings relating to a January 1981 contract between the BSUDC and the State of New York for funding through the Neighborhood Preservation Program.

---

1. The defendant, in his memorandum of law at p. 9 makes the observation that "the gist of the crime of mail fraud is use of the mails .... The various mailings, though they are technically the acts that violate the federal statute, are really the jurisdictional bases for the federal prosecution." *See, e.g., United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir.1981), *cert. denied*, —— U.S. ——, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). That analysis might support the conclu-

sion that even innocent and routine mailings will sustain a mail fraud prosecution and that a nexus between the mailings and the scheme to defraud is not required because the concern of the statute is simply to protect the mails from misuse. For an interesting and comprehensive historical review of the Federal mail fraud statutes, *see* Rakoff, the Federal Mail Fraud Statute, 18 Duquesne Law Review 771 (1980).

The third act of racketeering of which he is accused consists of two separate mailings relating to an October 1981 contract between the BSUDC and the State of New York for funding through the Neighborhood Conservation Program.

The fourth act of racketeering of which he is accused consists of five separate mailings relating to a January 1982 contract between the BSUDC and the State of New York for funding through the Urban Initiatives Program.

The defendant argues, in essence, that he is charged with a single scheme to defraud and consequently with a single valid predicate act of mail fraud which the government seeks to circumvent by dividing that scheme into four parts and assigning separate mailings to each, thus creating four predicate acts of racketeering activity.

"Racketeering activity" as defined in 18 U.S.C. § 1961(1)(B) includes mail fraud. If, as has heretofore been decided and as the defendant concedes, each mailing is a separate offense, then each of the fourteen counts of mail fraud is a racketeering activity and at least two such acts would constitute a "pattern of racketeering activity" as that phrase is defined in 18 U.S.C. § 1961(5).

The argument made by the defendant in this regard is virtually identical to the argument made by the defendant in *United States v. Weatherspoon*, 581 F.2d 595 (7th Cir.1978). In rejecting the argument the court there said, at pp. 601–602, as follows:

A "scheme to defraud" is not an "act" indictable under the mail fraud statute, for though the offense of mail fraud "has its genesis in the scheme to defraud, the very gist of [the crime] is the use of the mails in executing the scheme" .... It is for this reason that each mailing in furtherance of a scheme to defraud is a separate offense under 18 U.S.C. § 1341 even if there is but one scheme involved .... Accordingly, as it is clear that the only "acts" indictable under 18 U.S.C. § 1341 are *mailings* in furtherance of a scheme to defraud, it follows that Weatherspoon has engaged

in five acts of "racketeering activity" as defined in 18 U.S.C. § 1961(1)(B) by virtue of the fact that she committed five separate acts of mail fraud. As a consequence, she engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§ 1961(5), 1962(c) because she committed two or more acts of racketeering activity. (emphasis in original) (citations omitted).

To the same effect, *see United States v. McManigal*, 708 F.2d 276, 282 (7th Cir. 1983). That analysis is precisely applicable here.

For the foregoing reasons, the defendant's motion to dismiss Count 15 of the indictment is denied.

## C. *The Motion to Dismiss Count 16*

Count 16 charges the defendant with "urging, suggesting and instructing witnesses to give false and misleading testimony before the grand jury and by giving disguised and misleading handwriting exemplars in response to orders of the grand jury," in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2.

The defendant moves to strike or dismiss this count on due process grounds or to sever it to avoid prejudice to the defendant at trial. In the alternative, the defendant moves for a copy of the grand jury minutes and of the charge before the grand jury regarding the handwriting exemplars so that he can evaluate the sufficiency and fairness of the presentation regarding the exemplars.

### 1. *The due process claim*

The defendant contends that the charge of obstruction of justice cannot be "premised on purportedly disguised or misleading handwriting exemplars" and that a prosecution for such a charge is unprecedented and a denial of due process" given the manner in which the exemplars were taken and the difficulty or impossibility experts would face in fairly and accurately interpreting them." (Defendant's Memorandum, p. 18). The defendant asserts that the exemplars were given at the request of

the Grand Jury although outside the presence of the jury but in the presence of his counsel; hundreds of exemplars were given and the content of the exemplars and the way in which he was to write them was as directed by the government agents; that he was never told the purpose of the exemplars or to what they would be compared or that they might be used against him and that no stenographic record was kept of the proceedings. Based upon these assertions, the defendant argues that it would be fundamentally unfair for the government to charge obstruction of justice on the ground that the defendant provided disguised or misleading exemplars when the varying forms of the exemplars were given at the request of government agents. The defendant advances no authority to support his contention.

18 U.S.C. § 1503 provides, in relevant part as follows:

"Whoever corruptly ... endeavors to influence, obstruct, or impede the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years or both."

■ An essential element to be satisfied for any violation of § 1503 is that a judicial proceeding be pending so that the conduct of the accused may impede its due administration. *Pettibone v. United States*, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893); *United States v. Moon*, 718 F.2d 1210, 1236 (2d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984); *United States v. Johnson*, 605 F.2d 729, 730 (4th Cir.1979). A pending investigation by a grand jury is deemed to be such a proceeding. *United States v. Moon, supra; United States v. Walasek*, 527 F.2d 676, 678 (3rd Cir.1975); *United States v. Campanale*, 518 F.2d 352, 366 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

■ Another element to be satisfied is intent to impede the administration of justice, which may be inferred from a showing that the defendant had knowledge or notice that his conduct would obstruct justice then actually being administered. *United*

*States v. Moon, supra; United States v. Buffalano*, 727 F.2d 50, 53–54 (2d Cir. 1984).

■ The indictment alleges the essential elements and the defendant's motion does not challenge its sufficiency as to those. What it does challenge is whether the charge that the defendant gave disguised and misleading handwriting exemplars is a charge of conduct that is embraced by § 1503.

Neither the government nor the defendant has called the attention of the Court to any precedent precisely in point. There are, however, touchstones provided by numerous other cases which point the way to a conclusion that § 1503 is "all-embracing and designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice." *United States v. Solow*, 138 F.Supp. 812, 814 (S.D. N.Y.1956). *See United States v. Walasek, supra; United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir.1981). The conduct of the defendant alleged to be unlawful here is clearly analogous to an endeavor to conceal or alter or destroy a document pertaining to a matter under investigation which has frequently been held to violate § 1503. *United States v. Walasek, supra*, 527 F.2d at 679–680; *United States v. Rasheed, supra*, 663 F.2d at 852. In either case, what is allegedly sought to be achieved by the defendant may be accurately described as a miscarriage of justice which § 1503 is designed to combat. *United States v. Howard*, 569 F.2d 1331 (5th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978).

As to the other arguments made by the defendant on this phase of his motion, suffice it to say that the government has the burden of proving the allegations in Count 16 together with the requisite elements to justify a conviction on that count to the satisfaction of a jury beyond a reasonable doubt.

■ Subsequent to the submission and argument of this motion, the defendant, by letter dated April 26, 1984, called the

Court's attention to *United States v. Hernandez*, decided by the Court of Appeals for the Second Circuit on March 23, 1984, 730 F.2d 895. He contends that *Hernandez* requires a dismissal of that portion of the obstruction of justice count which charges him with urging grand jury witnesses to give false and misleading testimony and seeks to amend his motion as to Count 16 accordingly.

In *Hernandez*, the defendant, in a nine count indictment, was charged in one count with obstruction of justice in violation of 18 U.S.C. § 1503 and in another with threatening a witness in violation of 18 U.S.C. § 1512. The act which formed the basis for the charges was a statement by the defendant to a witness that unless the witness produced certain checks, the defendant would kill him. Having been convicted on both counts, the defendant appealed his conviction for obstructing justice on the ground that threatening a witness is no longer proscribed by § 1503 and is a violation of § 1512 only.

In 1982, Congress enacted the Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1248 (1982) and in so doing removed all references to witnesses from § 1503. The newly enacted section, § 1512, was intended to provide greater protection for witnesses than did § 1503. The new section protects witnesses against being influenced by intimidation and harassment in addition to corruption, threats, or force to which § 1503 was limited. The Court of Appeals reversed Hernandez' conviction under § 1503. In doing so, the court rejected the government's argument that Congress intended to make witness intimidation and harassment punishable under § 1512 and also under the residual clause of § 1503 which provides that "[w]hoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice shall be [guilty of a crime]." The Court noted that "Congress affirmatively intended to remove witnesses entirely from the scope of § 1503." At 898. The sweep of that observation was, it would seem, narrowed later in its opinion when the Court said: "In short, by enacting the Victims and Witness Protection Act in 1982, Congress intended that *intimidation and harassment* of witnesses should thenceforth be prosecuted under § 1512 and no longer fall under § 1503." At 899 (emphasis added).

In Count 16, the defendant here is charged with obstructing justice, in violation of § 1503, by giving disguised and misleading handwriting exemplars to the Grand Jury, as has already been discussed, and he is also charged with "urging, suggesting and instructing witnesses to give false and misleading testimony before the Grand Jury." If "urging, suggesting and instructing" is not conduct prohibited by § 1512 and if witnesses were literally removed entirely from the scope of § 1503, then the conduct with which the defendant is charged would not violate either section.

Section 1512 provides, in relevant part, as follows:

(a) Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) influence the testimony of any person in an official proceeding;

(2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document or other object from an official proceeding;

\* \* \* \* \* \*

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense ...

shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

The Congressional intent to broaden the protection afforded witnesses is reflected in subsection (b) of § 1512, which provides:

(b) Whoever intentionally harasses another person and thereby hinders, delays, prevents or dissuades any person from—

(1) attending or testifying in an official proceeding;

(2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense ...

\* \* \* \* \* \*

or attempts to do so, shall be fined not more than $25,000 or imprisoned not more than one year or both.

"Harass" is not among the terms defined in 18 U.S.C. § 1515. The definition of that term in N.Y.Penal Law § 240.25 is instructive. If to "urge, suggest or instruct" is not to "intimidate, force, threaten or harass" then § 1512 is not applicable and if § 1503, as amended, is also not applicable, then neither section reaches the conduct with which the defendant is charged here.

Assuming that this conclusion is dictated by giving the words of the statute and of the indictment their ordinary meaning, is the result consistent with the Congressional intent in enacting § 1512 and amending § 1503? The answer would appear to be furnished by a Legislative History Report to be found in 1982 U.S.Code Cong. & Ad.News, which at pp. 2515, 2524 states that the [Senate] Committee on the Judiciary:

... determined to include subsection (a)(3). The Committee does not intend that the doctrine of *ejusdem generis* be applied to limit the coverage of this subsection. Instead, the analysis should be functional in nature to cover conduct the function of which is to tamper with a witness, victim, or informant in order to frustrate the ends of justice. *For exam-*

*ple, a person who induces another to remain silent or to give misleading information* to a Federal law enforcement officer would be guilty under subsection (a)(3), irrespective of whether he employed deception, intimidation, threat, or force as to the person.

(emphasis added)[2]

That expression of Committee intent would suggest that urging, suggesting or instructing another to give misleading testimony before a Grand Jury (the charge against this defendant) was believed to be embraced by the enactment of § 1512. Examination reveals, however, that the subsection (a)(3) to which the report makes reference was in the Senate version of § 1512 which was subsequently deleted and not adopted. *Cf.* 128 Cong.Rec.S. 11430 (daily ed. Sept. 14, 1982) with 128 Cong. Rec.S. 13059 (daily ed. Oct. 1, 1982); *see also,* 128 Cong.Rec.H. 8465 (daily ed. Oct. 1, 1982). The version of subsection (a)(3) which was enacted has been set out above.

In presenting an analysis of the final version of the statute to his colleagues in the House and commenting particularly on § 1512(b), *supra,* Congressman Rodino noted that the "language will reach thinly-veiled threats that create justifiable apprehension in a victim or witness. *It does not reach mere annoyance, however, nor does it reach conduct, for example, that is not intended by the defendant to prevent the witness from testifying in an official proceeding.*" 128 Cong.Rec. H. 8469 (daily ed. Oct. 1, 1982) (emphasis added).

In commenting on Subsection (a)(3) of the bill as initially passed by the Senate

---

**2.** The subsection (a)(3) to which that report referred, appeared in an earlier version of the proposed § 1512 (S 2420) and read as follows:

(a) Whoever—

\* \* \* \* \* \*

(3) with intent corruptly, or by threats of force, or by any threatening letter or communication, influences, obstructs, impedes, or attempts to corruptly, or by threats of force, or by threatening letter or communication, influences, obstructs, impedes the—

(A) enforcement and prosecution of federal law;

(B) administration of law under which an official proceeding is being or may be conducted; or

(C) exercises or [sic] a Federal legislative power of inquiry, shall be punished as provided in subsection (b).

(128 Cong.Rec. S. 11439 (daily ed. Sept. 14, 1982)),[3] Senator Heinz said:

> Subsection (3) of section 1512(a) of the Senate passed bill, general obstruction of justice residual clause of the intimidation section, was taken out of the bill as beyond the legitimate scope of this witness protection measure. It also is probably duplicative of abstruction [sic] of justice statutes already in the books.

128 Cong.Rec. § 13063 (daily ed. Oct. 1, 1982).[4]

The charge against the defendant of "urging, suggesting and instructing witnesses to give false and misleading testimony before the Grand Jury" is not one which accuses him of intending to prevent the witness from testifying in an official proceeding. On the contrary, it suggests that he wanted them to testify, and thus corruptly endeavored to influence, obstruct and impede the due administration of justice. In this respect, *United States v. Hernandez, supra,* is plainly distinguishable.

It is clear that Congress intended to broaden the protection of witnesses by enacting § 1512. That is not to say, however, that it intended to diminish the scope of § 1503 insofar as it aimed at preventing obstruction of justice and the statement of Senator Heinz makes that manifest. It is interesting to note in this regard that § 1512 contains no reference to impeding or obstructing the due administration of justice.

In the frequently cited case of *Catrino v. United States,* 176 F.2d 884 (9th Cir.1949), the defendant was charged with obstructing justice in that he endeavored to procure another to testify falsely in a judicial proceeding. In concluding that § 1503 was violated, the court wrote the frequently cited sentence, at p. 887: "The obstruction of justice statute is an outgrowth of Con-

gressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined." *See also United States v. Solow, supra. Catrino* was referred to by the Committee on the Judiciary in its report on § 1512 before the deletion of subsection (a)(3), as was *Falk v. United States,* 370 F.2d 472 (9th Cir.1966), *cert. denied,* 387 U.S. 926, 87 S.Ct. 2044, 18 L.Ed.2d 982 (1967). 1982 U.S.Code Cong. & Ad.News at 2524. In *Falk* the court recognized that an attempt to induce another to give false testimony is an endeavor to influence, obstruct or impede the due administration of justice which is separate and distinct from a charge of influencing a witness.

The omission of the general obstruction of justice residual clause from the statute as finally enacted is meaningful in a case such as this where it is not alleged that the witness was forced, threatened or harassed to do or refrain from doing anything and therefore not in need of protection. In that sense the general residual clause was "beyond the legitimate scope of the witness protection measure." Rather, it is the administration of justice that the indictment alleges is in need of protection and in that sense, there is such a statute "already on the books."

The defendant's motion to dismiss a portion of Count 16 on the basis of *United States v. Hernandez* is entertained and denied.

### 2. *Severance*

 In support of his motion to sever, the defendant contends that the handwriting exemplars are collateral to the mail fraud and RICO counts which should be evaluated by a jury on their merits without

---

**3.** See *supra* note 2.

**4.** A comparison of the subsection (a)(3) to which Senator Heinz referred and that was deleted, with the clause of § 1503 under which this defendant is charged makes clear the duplication of obstruction of justice statutes already on the books to which he made reference. That clause reads as follows:

> Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years or both.

the distraction of the controversy to which the handwriting exemplars may give rise. The decision to grant or deny a motion to sever lies within the broad discretion of the Court. *United States v. Losada,* 674 F.2d 167 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). That discretion is informed by the likelihood of substantial prejudice which the defendant does not assert. Rule 14 Fed.R. Crim.P.

Rule 8(a) of the Fed.R.Crim.P. provides in relevant part as follows: "Two or more offenses may be charged in the same indictment ... in a separate count for each offense if the offenses charged, ... are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The charge of obstruction of justice arising as it does out of an alleged endeavor to distort his handwriting is related to the allegation that he issued checks in the name of others contained in the mail fraud counts.

For the foregoing reasons, the defendant's motion to dismiss Count 16, or in the alternative to sever Count 16 from the other counts of the indictment, is denied.

## II.

The defendant has moved, pursuant to Rules 6(e)(3)(C)(i) and (ii) of the Fed.R. Crim.P. for an order releasing to him all or part of the minutes of the Grand Jury that indicted him and of any other federal grand jury to which his case was presented.

■ To the general rule of secrecy of grand jury proceedings, Rule 6 provides for two exceptions which are sought to be invoked by the defendant. Disclosure of matters occurring before the grand jury may be made when so directed by a court preliminarily or in connection with a judicial proceeding; or when permitted by a court at the defendant's request upon a showing that grounds may exist to dismiss the indictment because of matters occurring before the grand jury. Rule 6(e)(3)(C)(i), (ii).

■ A statement of the grounds upon which the defendant claims entitlement to this relief will be attempted given the concession on page 21 of his Memorandum that "The grounds which justify defendant's discovery of the minutes of the grand jury proceedings against him have not yet been fully developed and can be expected to become clearer and more definite as discovery in this case proceeds." Thereafter, the defendant asserts that it is important for him to know whether the record of the investigation of his activities conducted by the State Investigation Commission was presented to the Grand Jury and, if so, how it was presented given the hearsay and highly prejudicial nature of that record.

The defendant also speculates that more than one grand jury may have heard evidence against him and it is, therefore, possible that what was submitted to one such jury may have been submitted to another in some abbreviated or hearsay form.

He also asserts that although the target of a grand jury investigation by the District Attorney in New York County, he was not indicted there. He was indicted twice by a grand jury in Kings County and convicted on one of the indictments but a witness at his trial subsequently recanted although the subject of her recantation is not yet resolved.

He claims too that the grand jury minutes should be disclosed to him so that he can be fully informed of the basis upon which the grand jury acted in charging him with obstruction of justice and so that he can ascertain whether the mailings in the mail fraud counts support federal jurisdiction.

■ The reasons thus advanced for disclosing to him the minutes of the grand jury are based upon speculation and conjecture. The defendant's motion addressed to the sufficiency of the numbered counts of the indictment has been denied and he has made no showing in connection with this aspect of his motion that grounds to dismiss the indictment may exist. There is a presumption that grand jury proceedings

are lawful and regular and the defendant has not advanced any reason which would suggest that the proceedings leading to his indictment were not. *See, e.g., In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033, 1041 (3d Cir.1980). In sum, the defendant has failed to demonstrate a particularized need that would outweigh the need for secrecy of grand jury proceedings. *United States v. Williams*, 644 F.2d 950, 952 (2d Cir.1981).

### III.

■ The defendant moves to strike portions of paragraph numbered 6 of the Introduction which read:

> In 1979 in order to preserve the integrity and further the goals of the publicly funded community rehabilitation and preservation programs, the State of New York prohibited:

The defendant contends that the language is prejudicial in that it implies a criminal prohibition when the language that follows indicates that the prohibition is either contractual or by virtue of administrative agency rule. I find nothing in the language objected to that is irrelevant, prejudicial or inflammatory. The text of that paragraph, in its entirety, makes plain the source of the prohibition. *See United States v. Sciandra*, 529 F.Supp. 320, 322 (S.D.N.Y.1982); *United States v. DePalma*, 461 F.Supp. 778, 797 (S.D.N.Y.1978).

The defendant also moves to strike the term "Mail Fraud" from the description of Racketeering Acts in the RICO count for the reason that "this phrase, although familiar to lawyers as a shorthand reference to § 1341 would be prejudicial to jurors." The defendant's contention lacks merit for the reasons already given and his motion to strike portions of the indictment is denied.

### IV.

Finally, the defendant moves to extend his time to make formal discovery motions and for the particulars he has sought.

As to his request for an extension of time to make formal discovery motions, the defendant's attention is called to paragraph numbered 12 of the pretrial order previously issued. I have not been made aware of any need for extending or modifying the terms of that paragraph and the motion in this regard is denied.

■ The defendant's motion for an order directing the Government to file a bill of particulars, pursuant to Rule 7(f) of the Fed.R.Crim.P. is, for the most part, not aimed at informing him of the nature of the charges against him to permit him to properly prepare his defense. It is, rather, a wide ranging inquiry in the nature of discovery, to elicit the Government's evidence and to limit its proof at trial. A bill of particulars cannot be required to serve such an inquiry. The citation of authority for that proposition would be superfluous. The defendant does not cite authority to support the requests he makes nor does he advance any reasons to explain why the information is needed. Some of the requests border on the frivolous given the allegations of the indictment. For example, request numbered 3 asks the Government to "state whether the victims of the scheme and artifice to defraud were ·any particular citizens, governmental subdivisions, departments, agencies, officials and employees, as opposed to citizens, etc. in general, and if it is claimed that there are particular victims, give identifying particulars." Another illustration is request numbered 4 which asks the Government to "give the particulars of the service of the defendant Beatty in his official capacity as State Senator that it is claimed were not conducted in an honest, faithful and disinterested fashion, free from fraud, corruption and deceit."

After reviewing the requests made by the defendant, his motion to direct the Government to furnish him with particulars is granted, as follows:

Requests 2(a), 2(b), 12, 13, 14, and 15 are granted to the extent only that the Government shall furnish the names of the persons the defendant seeks.

Request 16 is granted to the extent only that the Government shall furnish the de-

fendant with the names of the payees therein referred to.

Requests 23(f) and 23(g) are granted to the extent only that the Government shall furnish the defendant with the address of the property, the purchase price, and amounts of payments therein referred to.

In all other respects, the defendant's motion for a bill of particulars is denied.

SO ORDERED.