### The UNITED STATES of America

v.

### Jerry L. KING.

### No. CR–84–69E.

United States District Court,
W.D. New York.

Nov. 19, 1984.

Rodney O. Personius, Asst. U.S. Atty., Buffalo, N.Y., for plaintiff.

Joel L. Daniels, Buffalo, N.Y., for defendant.

## ORDER

ELFVIN, District Judge.

Following trial on a four-count indictment, the above-named individual ("the defendant") was found guilty October 9, 1984 of having conspired to deal in and utter counterfeit money (Count I) in violation of 18 U.S.C. §§ 472 and 473 and of having knowingly engaged "in misleading conduct toward another person with intent to hinder and prevent the communication to a law enforcement officer" of information relating to illegal activity (Count IV) in violation of 18 U.S.C. § 1512. The defendant was acquitted of Counts II and III which charged him with having knowingly transferred and delivered counterfeit money in violation of 18 U.S.C. § 473.

The defendant having moved against the verdicts, this Court heard oral argument on the matter October 15, 1984; defendant's motion as to Count I was denied and defendant's motion as to Count IV was taken under advisement.

The statute upon which Count IV is premised, 18 U.S.C. § 1512, is part of the "Victim and Witness Protection Act of 1982." As is set forth in the Congressional findings and declaration of purposes cited in the notes to the Act, the legislation is intended to "enhance and protect the necessary role of crime victims and witnesses in the criminal justice process," and "to ensure that the Federal Government does all that is possible * * * to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant." Although section 1512 is somewhat generically captioned "Tampering with a witness, victim, or an informant," it is clear from the plain language of the statute that the section is essentially aimed at protecting witnesses and victims from intimidation or harassment. *See, e.g., United States v. Hernandez*, 730 F.2d 895, 898–899 (2d Cir. 1984). In the present case the government's theory of guilt under Count IV is based on conversations between the defendant and one Frank S. Orgovan, Jr. which took place between July 26th and August 4th of 1983. Orgovan had been previously apprehended by government agents for passing counterfeit money. Unbeknownst to King, Orgovan subsequently had related his and King's guilty conduct and had agreed to be "wired" in order to assist the government's investigation into King's involvement in the counterfeiting scheme. Tapes of two conversations between King and Orgovan, August 2, 1983 (Government's Exhibit 7) and August 4, 1983 (Government's Exhibit 10), were a substantial part of the evidence on the trial. In both conversations King discusses, in a rambling fashion, how Orgovan should

**1230**

respond to the situation King believes them to be in—to wit, threatened with incarceration. In essence, King tells Orgovan that they need to stick together and that the government will put pressure on them in various ways to get them to turn against each other. King repeatedly suggests that Orgovan refuse to cooperate with the authorities, that he should relate an exculpatory story and that he refer them to his (Orgovan's) attorney when pressed.

> "They're buffaloing you. See, Frank what they're still trying to do is connect you, me and Dennis [King's brother who was in prison on counterfeiting charges], get you to say [the counterfeit money] came from me or somethin' like that and that's all they're trying to do." Government's Exhibit 10 at 2.

King also promised several times that he would help Orgovan financially both with regard to legal fees and with regard to Orgovan's wife and children in the event Orgovan were to be sentenced to prison. *See, e.g.*, Government's Exhibit 7 at 5, 9 and 17. At no time in either conversation is there any overt intimidation of Orgovan by King. Rather, King speaks more in the context of two friends sticking together when one of them is in trouble:[1]

> "Believe me, this [the counterfeiting] is big * * * syndicate stuff. We don't wanta get * * * involved Frank. The best thing to do is take your * * * medicine and keep your mouth shut, because [the syndicate] will come in and kill you, your family, me, and my family * * *." *Id.* at 11.

■ Section 1512 provides in relevant part:

> "Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—* * * hinder, delay or prevent the communication to a law enforcement officer * * * of the

United States of information relating to the commission or possible commission of a Federal offense * * *" shall be guilty of an offense against the United States.

The government has chosen in this case to proceed under the "misleading conduct" alternative of the statute. The phrase is defined in 18 U.S.C. § 1515(3) as one of five specific categories of conduct. Clearly the vague and generalized discussions between King and Orgovan, who was himself involved in the counterfeiting scheme, cannot be said to have been actually misleading as to Orgovan; King nevertheless would have violated the statute if the true situation had been as King thought it to be—to wit, that Orgovan had not as of that point in time made any inculpatory revelation to the authorities. So gauged, did King (A) knowingly make a false statement to Orgovan or (B) omit information from his statement to Orgovan or conceal a material fact from Orgovan so that the statement was misleading or a false impression was created or (C) submit to Orgovan or invite Orgovan's reliance on a false, forged or altered writing or recording or (D) submit to Orgovan or invite Orgovan's reliance on a materially misleading object? Clearly no evidence was adduced from which the jury could have found present any of such manifestations of "misleading conduct" "toward another person." Assuredly the government and government agents are not the "another person;" if either were, King might have been shown to have, by his endeavors to persuade Orgovan to relate a false story to the government and its agents, "knowingly used a trick, scheme, or device with intent to mislead" it or them. Such construction is, however, foreclosed by a reading of 18 U.S.C. § 1512(a) in its entirety. Once it is construed, as it must be, that Orgovan was the "another person" contemplated by section 1512 it becomes crystal clear that there was not any evidence adduced in this case upon which a jury could rationally find that King had

---

1. King does not actually acknowledge involvement in the counterfeiting scheme and makes several vaguely exculpatory statements. For example: "* * * I will never admit to doing anything because as far as I'm concern [sic] I haven't done any * * * thing wrong." Government's Exhibit 7 at 2.

employed a trick (which term can not reasonably be held as embracing slick and persistent salesmanship) or a scheme or a device to mislead Orgovan. King, simply and flat-out, tried to persuade Orgovan to lie.

The only misleading conduct by King that is apparent from the record is with respect to government authorities. What the government has charged with respect to Count IV is more appropriately labelled obstruction of justice. King was shown, not so much as having misled or tried to mislead Orgovan as misleading or attempting to mislead the government by suggesting to Orgovan ways in which he might forestall or substantially impede the government investigation of King, but not by "misleading conduct." As is made clear by the careful statutory analysis set forth in *United States v. Beatty*, 587 F.Supp. 1325 (E.D.N.Y.1984), such a charge may be appropriate under 18 U.S.C. § 1503, but is not under 18 U.S.C. § 1512. In *Beatty* the Court noted comments by Senator Heinz on 18 U.S.C. § 1512(a)(3) as initially passed by the Senate (128 Cong.Rec.S. 11439 (daily ed. Sept. 14, 1982)) to the effect that:

"Subsection (3) of section 1512(a) of the Senate passed bill, general obstruction of justice residual clause of the intimidation section, was taken out of the bill as beyond the legitimate scope of this witness protection measure. It also is probably duplicative of abstruction [sic] of justice statutes already in the books." 128 Cong.Rec. S. 13063 (daily ed. Oct. 1, 1982); *see Beatty, supra* at 1332–1333.

The Court, in *Beatty*, concludes:

"It is clear that Congress intended to broaden the protection of witnesses by enacting § 1512. That is not to say, however, that it intended to diminish the scope of § 1503 insofar as it aimed at preventing obstruction of justice and the statement of Senator Heinz makes that manifest. It is interesting to note in this regard that § 1512 contains no reference to impeding or obstructing the due administration of justice." *Beatty, supra* at 1333.

In *Beatty*, as in the present case, there was no showing that a witness was "forced, threatened or harassed to do or refrain from doing anything." *Ibid.* Accordingly, that Court denied defendant's motion to dismiss a charge brought under 18 U.S.C. § 1503. In the present case, by the same reasoning used in *Beatty* and because the different statute is involved, so too must the result be different. Accordingly, it is hereby ORDERED that defendant's motion against the verdict with respect to Count IV is granted and that the jury's verdict as to Count IV is vacated and that a verdict of not guilty as to Count IV shall be recorded and entered.