**UNITED STATES of America,**

v.

**Luis Alborto FORERO, Jose Castellanos and Sonia Cuevas, Defendants.**

**No. 85 CR 109.**

United States District Court, E.D. New York.

July 31, 1985.

Raymond J. Dearie, U.S. Atty. for the E.D.N.Y. by Ephraim Savitt, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Barry Schulman, of Schulman & Laifer, Brooklyn, N.Y., for Jose Castellanos.

Kenneth J. Weinstein, Garden City, N.Y., for Sonia Cuevas.

Sidney Sparrow, Brooklyn, N.Y., for Luis Alborto Forero.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Defendants are charged with conspiracy to possess and distribute cocaine (21 U.S.C. § 846) and possession of a substantial quantity of cocaine with the intent to distribute it (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2). They join in a motion seeking (1) suppression of the fruits of a warrantless search; (2) suppression of statements made by defendant Cuevas, and (3) severance of their trials. In addition, defendant Castellanos moves to dismiss the indictment claiming insufficiency of the evidence against him.

For the reasons set forth below, defendants' motions are denied.

### Facts

On the night of February 11, 1985, Special Agent Giovino and Detective Connors, both of the N.Y. DEA Task Force, were surveilling a known high-volume drug trafficking area in the vicinity of 82nd Street and Roosevelt Avenue in Queens. At about 10:30 p.m., the agents observed the three defendants leaving a Chinese restaurant and entering a dark, late-model Cadillac (Tr. 5, 111). The driver, Forero, looked up and down the street before entering the car (Tr. 7). The defendants then "screeched their tires away from the curb and drove off very quickly," thus, arousing the agents' suspicion (Tr. 7).

The defendants drove around the neighborhood for a few minutes before proceeding to a private two-story house on 90th Street, a location well known to the agents as the subject of two previous narcotics related investigations (Tr. 10–11). All three defendants were observed entering the house.

About fifteen minutes later, the defendants emerged from the house (Tr. 9). Defendant Cuevas was carrying a black leather shoulder bag (Tr. 10). The defendants entered the Cadillac with Forero, the driver, and Castellanos in the front seat, and Cuevas, who held the bag, in the rear.

Again, the car drove off at an excessive rate of speed and proceeded east on Northern Boulevard (Tr. 10). The agents attempted to follow the car, but had difficulty keeping up (Tr. 12). Nonetheless, they were able to keep the car in sight because of its broken taillight (Tr. 113). Along the way, the agents enlisted the help of two New York City police officers who were parked in their patrol car (Tr. 112). Upon catching up to defendants' Cadillac, the police officers activated their flashing lights and signalled to the defendants to pull over. Forero continued to drive for a few blocks before finally pulling over (Tr. 114).

During the last few blocks when Forero was pursued by the patrol car, the agents' unmarked vehicle was driving alongside Forero's car (Tr. 113). The agents observed considerable movement inside the defendants' car. Specifically, they observed defendant Castellanos, the front seat passenger, turn and face defendant Cuevas in the rear seat. Castellanos appeared to be reaching over the seat to the rear floorboard. At the same time, Cuevas appeared to be rocking back and forth and

bending over toward the front seat (Tr. 15, 114–15).

When defendants' car finally stopped, the marked patrol car pulled up directly behind it. The agents then parked their unmarked car in front of defendants' car (Tr. 52).

Agents Giovino and Connors came out of their car "pretty quick" and approached defendants' vehicle, with Connors walking toward the passenger side of the car and Giovino approaching the driver's side. Agent Giovino had his gun out (Tr. 52). Agent Connors, who did not have his gun drawn, alerted the uniformed officers of the suspicious movement in defendants' car (Tr. 116). Thus, the uniformed officers remained back by their patrol car; it is unclear whether their guns were drawn (Tr. 115–16).

As Agent Connors approached the left side of the Cadillac, he noticed that Cuevas was concealing an object beneath her coat. Concerned that the hidden object might be a weapon, he asked Cuevas to slowly open her coat (Tr. 116). As Cuevas opened her coat, Connors observed that she was concealing a slightly open pocketbook with a large clear plastic bag of white powder sticking out (Tr. 116). The powder was later determined to be cocaine.

At that point, Connors asked Cuevas to step out of the car; Agent Giovino asked the other two defendants to do the same. All three defendants complied and, following a routine patdown for weapons, the defendants were placed under arrest (Tr. 16–17, 117).

Agent Giovino then noticed that the back seat of the Cadillac had been moved forward to partially cover the black bag that Cuevas had carried from the house on 90th Street (Tr. 16). The bag was open and contained two large clear plastic bags of white powder (later determined to be approximately one kilogram of high-purity cocaine) (Tr. 17).

The defendants were transferred a few blocks to the 109th police precinct for post-arrest processing (Tr. 18). There, all three

defendants were advised of their rights in both Spanish and English (Tr. 18).

During the course of a routine post-arrest pat-down of defendant Forero, Agent Giovino discovered two clear plastic bags of white powder secreted inside his clothing and undergarments (later determined to be approximately nine ounces of high purity cocaine). A third bag of cocaine was later found in Forero's cell. Agent Giovino testified that the cell was clean when Forero was placed in it (Tr. 19).

After being processed, defendant Cuevas, a United States citizen who speaks English, was again advised of her *Miranda* rights, in English, by Agent Giovino (Tr. 23). Cuevas indicated that she understood her rights and was willing to speak. She then proceeded to give a statement as to how she and her co-defendants came to possess the cocaine (Tr. 23–28).

## Discussion
### Suppression of Cocaine
#### The Vehicle Stop

■ First, defendants move to suppress the cocaine seized from their persons and from the bag inside the car, contending that the vehicle stop and the subsequent search and seizure were illegal. I disagree.

Clearly, "law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley,* — U.S. —, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985). "In considering whether the facts and inferences support a reasonable suspicion, the law enforcement agent's observations 'must be viewed as a whole, not as discrete and separate facts.'" *United States v. Gaviria,* 740 F.2d 174, 181 (2d Cir.1984). Viewing the circumstances in their entirety, I conclude that the officers had a reasonable suspicion that the defendants were engaged in criminal activity.

At approximately midnight, defendants were observed driving at excessive speed and in an erratic manner from a high-vol-

ume drug area to a house known to be connected with drug-related activities. The defendant parked the car, entered the house, and then left a few minutes later. Defendant Cuevas was observed carrying a large black bag as she was leaving (Tr. 9–10). All three entered the car and, again, Forero screeched away at excessive speed (Tr. 10). This information, of itself, would have justified a brief investigatory stop of defendants' vehicle; but the agents' suspicions were heightened by the frantic behavior of the defendants inside the car just before the stop.

█ The defendants argue, however, that even if the agents had reasonable grounds for conducting an investigatory stop, the conduct of the agents, namely, blocking defendants' car and approaching the vehicle with at least one gun drawn, was so intrusive as to convert the stop into the "functional equivalent of an arrest." *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983); *United States v. Marin*, 669 F.2d 73, 81 (2d Cir.1982).

The factors determining whether an arrest has occurred include the amount of force used, the extent of the intrusion, and the degree of restraint on the individual's freedom of movement. *United States v. Marin*, 669 F.2d at 81; *United States v. Ceballos*, 654 F.2d 177, 181–82 (2d Cir. 1981). In addition, when the stop involves cars, *Marin* requires the Court to consider the number of police officers and cars used to make the stop, whether the car was blocked, and whether the police had their guns drawn and in view. *United States v. Marin*, 669 F.2d at 81.

The Second Circuit has cautioned that the mere fact that police officers have their guns drawn does not automatically convert a stop into an arrest. *United States v. Nargi*, 732 F.2d 1102, 1106 (2d Cir.1984). As the Court has noted:

If there is sufficient reasonable suspicion to justify an investigatory stop, reasonable force may be used to effect that stop.... [W]e cannot impose on law enforcement personnel the Hobson's choice

of keeping their guns holstered when to do so "increases the risk that [they] will be shot."

*United States v. Harley*, 682 F.2d 398, 402 (2d Cir.1982) (quotations and citations omitted). Thus, the Court must look at such factors as the nature of the crime under investigation, the degree of suspicion, the time and location of the stop, and the suspect's reaction to the agent's approach. *United States v. Nargi*, 732 F.2d at 1102.

Examining these factors in the present case, the suspected offense was a serious felony involving narcotics. The stop occurred late at night in a high-volume drug trafficking neighborhood. More importantly, the defendants' own conduct precipitated some use of force. Clearly, the agents could reasonably have viewed the defendants' frantic and erratic movements inside the car as posing a danger to them, since defendants may well have been reaching for weapons. *Cf. United States v. Harley*, 682 F.2d at 402. Thus, I conclude that Agent Giordino was fully justified in acting cautiously in unholstering his weapon as he approached the car.

Likewise, the mere fact that the agents' unmarked car pulled in front of defendants' car, thereby blocking its movement, is not dispositive. The defendants rely on the *Marin* and *Ceballos* cases, wherein the Court held that the use of three or four police cruisers to block the suspect's car, among other factors, constituted an excessive demonstration of force. *United States v. Marin*, 669 F.2d at 81; *United States v. Ceballos*, 654 F.2d at 183–84.

Those cases are clearly distinguishable, however, since the force used therein was not precipitated by any action of the defendants. *See United States v. Harley*, 682 F.2d at 401. Under the circumstances in this case, including the defendants' behavior inside the car and their delay in pulling over, the fact that two cars were used to effectuate the stop and that one car blocked the defendants' pathway, does not elevate the investigatory detention into an arrest. *Id.* at 402.

Finally, the behavior of the agents in effectuating the stop militates against defendants' claim. Detective Connors, the second agent, approached the car without having unholstered his gun. The two uniform police officers remained several feet in the background near their police car. Moreover, the agents did not immediately order the defendants to get out of the car. Instead, after seeing that defendant Cuevas was obviously concealing something under her coat, Detective Connors simply asked her to open the coat. In light of the agent's reasonable suspicion that Cuevas might be concealing a weapon, this request was clearly justified. *Terry v. Ohio*, 392 U.S. 1, 23–24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968).

Only after the cocaine was revealed were the defendants ordered out of the car and arrested. Thus, the duration of the investigatory stop was brief; in a matter of minutes, the cocaine was revealed and provided probable cause to arrest the defendants and to search the passenger compartment of the vehicle and its contents. *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). *See United States v. Ross*, 456 U.S. 798, 823–24, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982).

■ Finally, the cocaine found on defendant Forero's person during a routine pat-down search at the station was properly seized pursuant to a "search incident to arrest." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Likewise, the packet of cocaine found in Forero's cell was properly seized, since the officers' interest in deterring the smuggling of drugs into a custodial facility clearly outweighs the detainee's limited expectation of privacy, if any, in his cell. *Bell v. Wolfish*, 441 U.S. 520, 556–60, 99 S.Ct. 1861, 1883–85, 60 L.Ed.2d 447 (1979). Accordingly, defendants' motions to suppress the physical evidence seized are denied.

### Suppression of Statements

■ Defendants also move to suppress the post-arrest statement made by defendant Cuevas. The testimony of the government's witnesses has established, however, that Cuevas was advised of her rights at least twice, in both English and Spanish. Moreover, based upon the totality of the circumstances, I conclude that the government has met its heavy burden of demonstrating that the defendant knowingly and intelligently waived her privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). *See North Carolina v. Butler,* 441 U.S. 369, 374, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Defendant's statements were elicited in an atmosphere devoid of threats or violence. While there is some indication that defendant was nervous and upset, there is nothing in the record to indicate that defendant's waiver of her rights was anything but knowing and intelligent. In any event, it is doubtful whether defendants Forero and Castellanos have any standing to move to suppress a statement made by defendant Cuevas. Accordingly, the motion to suppress Cuevas' statements is denied.

### Severance

■ Both defendant Cuevas and defendant Castellanos move for a severance, contending that their defenses are conflicting. For instance, defendant Cuevas apparently will assert the defense of "innocent possession," claiming that she was an unwilling and unknowing participant in the other defendants' distribution scheme. Likewise, defendant Castellanos apparently claims that he was merely along for the ride, and was unaware of the cocaine. Notwithstanding defendants' contentions, however, I conclude that a severance is unwarranted.

The trial court is accorded considerable discretion in determining whether severance is warranted. *United States v. Moten,* 564 F.2d 620, 628 (2d Cir.), *cert. denied,* 434 U.S. 959, 974, 98 S.Ct. 489, 531, 54 L.Ed.2d 318, 974 (1977). This case is not particularly confusing or complex. With

the possible exception of defendant Cuevas' statements, the evidence in this case is admissible against all the defendants. The Second Circuit has noted that where, as here, "the crimes charged in the indictment arose out of the same acts and [are] established by substantially the same evidence, [then] in the interest of judicial economy, all the defendants should [be] tried together absent substantial prejudice." *United States v. Arroyo-Angulo,* 580 F.2d 1137, 1144 (2d Cir.1978).

Clearly, the mere existence of antagonistic defenses does not mandate a severance. *United States v. Sciandra,* 529 F.Supp. 320, 323 (S.D.N.Y.1982). "[T]o obtain severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Davis,* 623 F.2d 188, 194–95 (1st Cir.1980).

In short, the defendants have not met their burden of demonstrating that they will be substantially prejudiced by a failure to sever the trials. Accordingly, the severance motions are denied.

*Motion to Dismiss Indictment*

Defendant Castellanos moves to dismiss the indictment, claiming that the evidence against him is insufficient to support the charges contained therein. Defendant's motion is premature. Where an indictment is valid on its face, and has been returned by a legally constituted and unbiased grand jury, a motion to dismiss the indictment is appropriate only after the Court has been presented with the Government's proof at trial. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1976); Fed.R.Crim.P. 29. Inasmuch as the indictment is facially valid and there is no evidence that the grand jury was biased or improperly constituted, defendant's motion is denied.

SO ORDERED.