**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Abraham J. RODOLITZ, Defendant-Appellant.**

No. 1448, Docket 85–1112.

United States Court of Appeals, Second Circuit.

Argued Aug. 13, 1985.

Decided March 17, 1986.

---

1. Appellants' motion to enlarge the record is denied.

Richard A. Stanley, Sp. Asst. U.S. Atty., New York City, (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Stuart E. Abrams, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Jeffrey A. Rabin, Brooklyn, New York City, for defendant-appellant.

Before NEWMAN and WINTER, Circuit Judges, and COFFRIN, Chief District Judge.*

COFFRIN, Chief District Judge:

Defendant Abraham J. Rodolitz appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York (John E. Sprizzo, Judge) on March 27, 1985. The jury convicted Rodolitz of three counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of tampering with a witness in violation of 18 U.S.C. § 1512. The case arises out of defendant's allegedly fraudulent scheme to conceal from the Massachusetts Bay Insurance Company his involvement in the repair of a damaged roof on one of his own buildings. In addition, the defendant allegedly attempted to persuade a witness to lie before a federal grand jury. On appeal, Rodolitz contends, *inter alia,* that the government presented insufficient evidence to establish either mail fraud or tampering with a witness. He also alleges that assorted trial defects constitute reversible error. For the reasons stated below, we affirm both convictions.

## I. BACKGROUND

In late 1976, a windstorm damaged the roof of a commercial building owned by Oak Point Industrial Park, Inc. ("Oak Point"). Rodolitz owned Oak Point and, through the Massachusetts Bay Insurance Company, had insured the building against damage.

After the building was damaged, Rodolitz initiated a fraudulent plan designed to inflate the recovery of the claim against the insurance company. To accomplish this, either Rodolitz or one of his associates set up bank accounts in the name of one of

* Of the United States District Court for the Dis- trict of Vermont, sitting by designation.

several business entities. These businesses include Bolla Supply Company ("Bolla Supply"), Lawrence Roofing and Sheet Metal Company ("Lawrence Roofing"), and Tubular Products Manufacturing Company. Rodolitz also maintained an account in the name of Zeroy Industrial and Distribution Corporation ("Zeroy") which became active in this plan. Rodolitz, himself or through his associates, transferred funds between these corporations in an effort to create an appearance of legitimate transactions in roofing supplies and services between the businesses. According to the documents evincing the purported transactions, Rodolitz hired Lawrence Roofing and Zeroy to repair the roof on the Oak Point building. Lawrence Roofing and Zeroy then purportedly purchased from Bolla Supply the supplies necessary to perform the job. In fact, Rodolitz owned or controlled all the businesses and merely transferred money, materials and services between different branches of those businesses to give the illusion of arm's length transactions.

After using this method to establish a paper trail, Rodolitz filed a claim with the Massachusetts Bay Insurance Company for the $1,248,000 he asserts he expended in repairing the roof. He did not, however, reveal his connection to the companies purportedly involved in the repair. After the insurance company declined to pay the claimed amount, Oak Point sued the company in a New York state court and received a jury verdict of $1,226,241.39.[1] At no point, however, did Rodolitz reveal to the jury in that case that all money expended on the repair eventually returned to him.

During the course of the civil suit against the insurance company, Rodolitz caused the mails to be used on three separate occasions to further his attempt to recover the $1,248,000 from the insurance company.

After Rodolitz learned that a federal grand jury was investigating his activities in connection with his claim under the insurance policy, he attempted to persuade one Seymour Blutstein to lie in certain significant respects about Bolla Supply. At Rodolitz's request, Blutstein had fronted for Bolla Supply. He opened a bank account indicating through the Certificate of Doing Business that he was engaged in dealing in building material and supplies under that trade name. He deposited checks furnished by Rodolitz in the account and made withdrawals, as Rodolitz directed, to other payee business entities created by Rodolitz. Blutstein, granted immunity by the government, eventually refused to tell the story which Rodolitz had requested even though initially he had advised Rodolitz he would do so.

## II. DISCUSSION

Rodolitz claims on appeal that the government offered insufficient evidence as a matter of law to convict him of mail fraud in violation of 18 U.S.C. § 1341, or of witness tampering in violation of 18 U.S.C. § 1512. It is well established that the reviewing court must sustain the jury verdict in a criminal case if, "viewing the evidence in the light most favorable to the Government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *United States v. LeRoy,* 687 F.2d 610, 616 (2d Cir.1982) (*citing Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). Defendant, therefore, bears a very heavy burden. *United States v. Carson,* 702 F.2d 351, 361 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

We find that the defendant clearly failed to meet his heavy burden with regard to the three mail fraud convictions. The government presented ample evidence from which a jury could find beyond a reasonable doubt that defendant conducted a scheme to defraud and the use of the mails in furtherance thereof. Although a closer question, we also find that the record pro-

**1.** The trial judge set aside the jury's finding that Rodolitz expended $1,226,241.39 in repairing the roof. Both parties took an appeal from the order which is presently pending.

vides sufficient evidence for a jury to find, beyond a reasonable doubt, defendant guilty of tampering with a witness.

## A. Mail Fraud

■ To establish mail fraud, the government "must show that the defendant (1) participated in a scheme to defraud; and (2) knowingly used the mails to further the scheme." *United States v. Gelb*, 700 F.2d 875, 879 (2d Cir.), *cert. denied*, 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983). *See United States v. Corey*, 566 F.2d 429, 430 n. 2 (2d Cir.1977); *United States v. Cyphers*, 556 F.2d 630, 632 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977). In addition, "[p]roof of a fraudulent scheme requires evidence showing a specific intent to defraud." *Gelb*, 700 F.2d at 879. *See also United States v. Bronston*, 658 F.2d 920, 927 (2d Cir.1981) ("to make out a mail fraud violation, the Government must show that the scheme was devised with the specific intent to defraud, ... that the use of the mails in furtherance of the scheme was reasonably foreseeable, ... that ... any nondisclosures or affirmative misrepresentations must have been material, ... [and] that some actual harm or injury was at least contemplated ...") (citations omitted), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982). *But see United States v. Newman*, 664 F.2d 12, 20 (2d Cir.1981) (not required that government prove contemplation of harm in mail fraud case based upon breach of fiduciary duty by a private employee), *cert. denied*, 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983).

Evidence that the mails were used in furthering Rodolitz's insurance claim is uncontroverted. Rodolitz, however, claims that the government provided no proof that he acted with an intent to defraud or harm the insurance company or that his activities constituted a fraudulent scheme. He contends that he received only what he was due under the insurance policy, to wit, the actual value of the loss sustained in the windstorm. He urges that any recovery he may have been awarded in excess of the actual value of the loss was due to a good faith error in estimation of the cost of repair. Rodolitz contends that because he got only that to which he was entitled under the policy, it is of no moment legally that circuitous or deceptive means were employed relative to the manner and cost of repair. For two reasons, we find appellant's argument completely without merit.

■ First, he argues that he received only that to which he was lawfully entitled under the Massachusetts Bay policy. That policy provides that recovery for damages be limited to the *smallest* of (1) the $3.8 million policy limit, (2) the replacement cost of the property intended for the same use, or (3) the amount actually and necessarily expended in repairing the property. If he sought only that to which he was legally entitled, no necessity existed for Rodolitz to hatch a fraudulent scheme. The evidence shows that Rodolitz opened and used sham bank accounts for a number of business entities. By transferring funds between these accounts, he created an appearance of "arm's length"[2] purchases of materials, some or most of which, according to Blutstein's testimony, Rodolitz already owned. Obviously under such an arrangement Rodolitz was in a position to "purchase" his own materials to repair the roof at whatever price he chose to invoice them to one of his own companies. Based on this evidence, the jury had ample grounds to find that Rodolitz developed and participated in this scheme to successfully recover more from the insurance company than he was lawfully due.

Second, and more importantly, it was not necessary for the government to prove that Rodolitz recovered more from the insurance company than that to which he was entitled. To sustain the conviction, the government needed to prove only that Rodolitz employed a deceptive scheme intend-

---

**2.** In his brief on appeal, counsel for the defendant stated that the circuitous nature of the purchases may have created the impression of an arm's length transaction. Appellant's Brief at 31.

ing to prevent the insurer from determining for itself a fair value of recovery. *See United States v. Gelb,* 700 F.2d 875, 879–80 (2d Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983); *United States v. Barta,* 635 F.2d 999, 1005 n. 14 (2d Cir.1980); *United States v. Adjmi,* 346 F.2d 654 (5th Cir.1965).

The evidence of the scheme was overwhelming. Rodolitz used sham business entities and several bank accounts to conceal his direct involvement with all aspects of the roof repair. In fact, he admitted to using circuitous and deceptive means in calculating the cost and manner of repair. Thereafter, it was a virtually inescapable conclusion that Rodolitz intended to defraud the insurance company by preventing the company (and the state court jury) from determining, on the basis of accurate date, how much Rodolitz was entitled to recover. There was ample evidence upon which the jury could have found the defendant guilty beyond a reasonable doubt of mail fraud and we affirm the three mail fraud convictions.

### B. Tampering with a Witness

■ Rodolitz also alleges insufficient evidence as a matter of law to convict him of tampering with a witness. Section 1512 of 18 U.S.C. provides in pertinent part that: "whoever knowingly ... engages in misleading conduct toward another person, with intent to ... influence the testimony of any person in an official proceeding ..." shall violate the statute. It is undisputed that Rodolitz urged Blutstein to tell a false story to the grand jury about Bolla Supply. This story revolved around Bob Smith, a business associate of Blutstein, who had recently died. Rodolitz suggested to Blutstein that they say Smith had been the manager of Bolla Supply. To flesh out the story, Rodolitz suggested that he and Blutstein maintain that Rodolitz had given Smith building supplies to sell on consignment through Bolla Supply and that subse-

quently Rodolitz needed the supplies. As a result, Rodolitz purchased the supplies from Smith, according to the story, allowing Smith to realize a modest profit on the transaction. Rodolitz told Blutstein they needed to tell this story to allow Rodolitz to get the proper value for the roofing supplies from the insurance company.

Relying on *United States v. King,* 762 F.2d 232 (2d Cir.1985), Rodolitz asserts there can be no misleading conduct when a witness is asked to tell a story the witness knows is false. *King* held that if a defendant simply tries to persuade a witness to mislead the government, but in no way misleads the witness, the defendant has not violated section 1512. *Id.* at 237. *See United States v. Beatty,* 587 F.Supp. 1325, 1331–33 (E.D.N.Y.1984) (the legislative history of section 1512 demonstrates that the section does not proscribe conduct that, without being misleading or threatening, induces others to lie to federal law enforcement officials; Congress included such a proscription in an earlier version of the legislation, but that version was deleted before final enactment). In *King* the defendant attempted to convince a witness to lie before a grand jury by telling a story that both the witness and the defendant knew was false. Furthermore the witness was aware of the true purpose for the fabrication, namely, to exculpate the defendant.[3]

The government, however, distinguishes *King* from the case at bar. The government contends that in the instant case Rodolitz not only asked Blutstein to tell a story they both knew was false, but also made a false statement to convince Blutstein to tell the fabricated story. Based on this reasoning, the court agrees with the government that *King* is not controlling.

Section 1515(3)(A) of 18 United States Code defines misleading conduct for purposes of section 1512 as "knowingly making a false statement." 18 U.S.C. § 1515(3)(A). The most obvious example of

---

**3.** The story which defendant King sought to have the witness tell the grand jury was that King's brother, rather than King himself, was implicated in a counterfeiting scheme which the grand jury was considering. *King,* 762 F.2d at 236–37.

a section 1512 violation may be the situation where a defendant tells a potential witness a false story as if the story were true, intending that the witness believe the story and testify to it before the grand jury. In contrast, in the instant case, defendant made false statements to convince Blutstein to lie to the grand jury. Although different in context and purpose, both situations involve the making of false statements, and therefore, according to section 1515, both involve misleading conduct under section 1512. In giving the statutory language its fair meaning, the court must find that making false statements to convince another to lie falls squarely within the definition of "engaging in misleading conduct toward another person" under section 1512.

In this case, if the jury could fairly and logically have found the statement made by Rodolitz to Blutstein to have been false, then the making of such statement would constitute misleading conduct under the statute. Accordingly we must determine (1) whether the government offered sufficient evidence that Rodolitz made false statements to Blutstein and (2) whether the jury could reasonably conclude that Rodolitz made the statements with the intent to influence Blutstein's testimony before the grand jury.

At trial, Blutstein testified about a statement that Rodolitz made to him. The government claims that by making this statement, Rodolitz violated section 1512. Blutstein related Rodolitz's statement as follows:

> He told me he had a large roof repair to do and that he had roofing supplies he had accumulated over the years in storage, over all the years he was in the construction business, and that he needed Bolla Supply to act as the ... apparent seller of the supplies to the company doing the roofing ... [i]n order to use the supplies and get the proper value ... from the insurance company.

According to the evidence at trial, the truth or falsity of this statement hinges on Rodolitz's meaning of "proper value." In the context used, the statement is open to a number of interpretations. In assessing the evidence, however, the court must view it most favorably to the government, and construe all permissible inferences in the government's favor. Based on these standards, the court finds that the jury could fairly and logically have concluded that in using the term "proper value," Rodolitz meant "the full insurance proceeds to which he was lawfully entitled." The evidence introduced at trial demonstrates such a statement to be clearly false. Therefore, the jury had ample evidence upon which to find that defendant's statement constituted misleading conduct.

We now turn to whether there was sufficient evidence for the jury to conclude that Rodolitz made the false statement with intent to influence Blutstein's testimony. In its brief, the government indicates that Rodolitz told Blutstein this version of the "truth" when Blutstein asked why they simply did not tell the truth. At trial, however, Blutstein merely testified that this statement described the truth as told to him by Rodolitz. Blutstein made no representation as to when Rodolitz so stated. Regardless of the circumstances under which Rodolitz made the statement, however, we find that the jury "fairly and logically" could have concluded that Rodolitz's purpose in so doing was to persuade Blutstein that lying was justified. *Carson*, 702 F.2d at 361. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

In sum, the court finds that using misrepresentation to convince someone to lie to the grand jury falls squarely within the prohibitions of section 1512. In addition, the government presented sufficient evidence upon which the jury could have concluded that Rodolitz engaged in misleading conduct toward Blutstein in an effort to influence Blutstein's testimony before the grand jury. Therefore, the court finds that defendant failed to meet the heavy burden the law imposes on him in his claim that the government failed to introduce sufficient evidence to sustain his conviction.

## C. Other Points of Appeal

Appellant argues other points of error by the trial court. Most notably, appellant contends that the court incorrectly instructed the jury with regard to New York insurance law with respect to damages as it pertains to the mail fraud counts. Because we find the fraud required for mail fraud inherent in the circuitous and deceptive means of substantiating the insurance claim, rather than simply in the amount recovered, defendant was not prejudiced by the court's charge with respect to damages recoverable under the insurance policy in the state court proceeding and we do not reach the validity of the court's instruction in that regard.

We have considered appellant's other alleged points of error and find them without merit.

### CONCLUSION

We affirm the district court's convictions for three counts under 18 U.S.C. § 1341, and one count under 18 U.S.C. § 1512(a)(1).