**Jose GUZMAN, Petitioner,**

v.

**Walter R. KELLY, Superintendent, Attica Correctional Facility, Respondent.**

**No. 89 Civ. 2619 (MGC).**

United States District Court, S.D. New York.

Jan. 8, 1990.

U.S.C. § 2254. On December 8, 1986 in the Supreme Court of Bronx County petitioner was convicted, after a jury trial, of murder in the second degree. N.Y.Penal Law § 125.25 (McKinney 1984). He was sentenced to an indeterminate prison term of twenty-five years to life.

Petitioner raises three grounds for relief. First, he claims that an oral statement that he made to an arresting officer after his arrest should not have been received into evidence at trial because he had not been advised of his *Miranda* rights before he made the statement, and because he had been beaten by the officer. Secondly, he claims that his videotaped confession should have been suppressed because the prosecutor continued to question him after he requested an attorney. Finally, petitioner contends that he was denied his Sixth Amendment right to represent himself at his criminal trial when he decided to dismiss his counsel and represent himself, and the trial judge denied his request for an adjournment to prepare himself.

The same claims were presented to the Appellate Division, First Department, which affirmed petitioner's conviction without opinion. *People v. Guzman*, 140 A.D.2d 1010, 529 N.Y.S.2d 669 (1st Dept. 1988). Petitioner's application for leave to appeal to the New York Court of Appeals, for review of the same claims, was denied. *People v. Guzman*, (Ind. no. 3583/85, May 17, 1988). For the reasons discussed below, the petition is denied.

Jose Guzman, Attica, N.Y., pro se.

Robert T. Johnson, Dist. Atty., Bronx, N.Y. by Stanley R. Kaplan, and Lawrence B. LaRaus, Asst. Dist. Attys., for respondent.

## OPINION and ORDER

CEDARBAUM, District Judge.

Jose Guzman, a state prisoner, petitions for a writ of habeas corpus pursuant to 28

## BACKGROUND

On February 15, 1985 there was a party at petitioner's basement apartment in the Bronx. (T293–296 [1].) Everyone was drinking beer and smoking marijuana. (T296, T299, T320–22, T326.)

Petitioner approached John Barreto, a guest at the party, and told him that Hector Santiago was insulting Jimmy Byrnes. (T298–299.) He asked Barreto to help him

---

**1.** Parenthetical numbers preceded by "T" refer to the combined *Huntley* hearing-trial transcript.

get rid of Santiago. Barreto refused and returned to the party. (T298–300.)

Moments later, petitioner and Santiago left the party and went to Albert Torres' bedroom which was down the hall. (T330, T337–339.) Torres, petitioner's half-brother, followed them and observed petitioner stab Santiago repeatedly with a knife. (T338–339.) Petitioner then tied up Santiago, placed him and a bloody rug in a cart and wheeled them down the hallway to the boiler room. (T339–341, T349, T352–357, T406–407.) In the boiler room, petitioner turned off the furnace, removed his blood-stained clothes, placed his clothes and Santiago in the furnace and relit the furnace. (T340–341, T349–355, T406–407.) Petitioner then noticed that Torres was watching, and asked him to clean up the blood from the floor. (T341, T347, T351.)

Barreto left the party and went into the hallway where he saw petitioner. (T301.) Petitioner, in response to Barreto's greeting, ran away saying that he had to take a bath. (T301.) Barreto entered the boiler room where he saw a blood-soaked coat and a trail of blood leading to the furnace. (T301–303, T328–329.) Barreto returned to the party and told people what he had seen. (T303.) Petitioner soon returned to the party and admitted to Barreto and two others what he had done. (T304, T358.)

The next morning, after Torres refused to help him, petitioner went to the boiler room to clean the furnace. He removed the bones, crushed them and placed the bones into a garbage bag. (T359.)

Detective Cipullo was in charge of the homicide investigation. (T197–199, T239–240.) On July 29, 1985 he and his partner, Detective Regino, arrested petitioner for the murder of Santiago. (T240–241, T246, T256.)

## DISCUSSION

### I. *Confession*

Petitioner was arrested outside of his place of work, and was transported to the police station in an unmarked police car. Petitioner asserts that neither Detective Cipullo nor Detective Regino read him *Mi-randa* rights after his arrest. In addition, he asserts that the arresting officers stopped the car during the ride to the station, and beat him severely. He argues that the oral statement he made to Detective Cipullo at the station should be suppressed because it was obtained in violation of *Miranda* and by physical coercion.

On October 23, 1986 a *Huntley* hearing was held by Justice Jerome Reinstein to determine, in part, whether Guzman's statement to Detective Cipullo should be suppressed. Detective Cipullo testified that he had read the *Miranda* rights to Guzman and that neither he nor Regino had beaten the petitioner. (T12, T16–17, T24–25.) Detective Regino corroborated Cipullo's testimony. (T90, T94.) Petitioner testified that he had not been read his rights, and that he was beaten by Detective Cipullo in the car on the way to the station. (T36, T37, T38.)

After the hearing, Justice Reinstein issued a written opinion in which he found, based on the credible evidence, that en route to the police station, Guzman had been given the required *Miranda* warnings and had acknowledged that he understood his rights. Justice Reinstein also found that Guzman had not been beaten by Detective Cipullo. Justice Reinstein concluded that suppression of the statement that Guzman made to Cipullo at the station was not warranted.

In considering a habeas corpus petition challenging a state conviction, a federal court shall presume the correctness of factual determinations made after a hearing on the merits by the state court when evidenced by a written finding or opinion, unless the evidence adduced at the hearing is not sufficient to support such determinations. 28 U.S.C. § 2254(d); *Campaneria v. Reid*, 891 F.2d 1014 (2nd Cir.1989).

After a careful reading of the *Huntley* hearing transcript, I find that there was substantial evidence to support Justice Reinstein's factual determinations. Therefore, Justice Reinstein's factual determinations require denial of petitioner's first claim.

## II. *Right to Counsel*

Several hours after Guzman arrived at the police station on the day of his arrest, he gave a videotaped confession to an Assistant District Attorney. Petitioner contends that this confession should have been suppressed because the Assistant continued to question him after he requested an attorney.

At the beginning of the videotape, the Assistant gave petitioner *Miranda* warnings. The following dialogue then took place:

Mr. Guzman, my name is Michael Eng, I am an Assistant District Attorney assigned to investigate the death of Hector Santiago, do you understand that?

Mr. Guzman: Yes.

Q. Do you speak English?

A. Yes.

Q. Understand English?

A. Yes.

Q. Everything that you say from now on will be taken down by Miss Benderoth on her stenographic—stenography machine, as well as being taken down by Mr. Powers on his video tape machine.

A. It can be used against me?

Q. I'll read you your rights.

A. It—it will be used against me, right?

Q. That's right. Let me begin. I'll tell you what your rights are Mr. Guzman. You have the right to remain silent, do you understand that?

A. Yes.

Q. Anything you say can be used against you in a court of law, do you understand that?

A. Yes.

Q. You have the right to consult with an attorney and have the attorney present with you now, during this interview, do you understand that?

A. Yes.

Q. If you cannot afford an attorney one will be appointed to you to represent you free of charge before any questions begin, do you understand that?

A. Is this attorney here right now?

Q. No. Do you want an attorney or do you want to speak to me without an attorney?

A. Can I have one over here?

Q. Are you saying you want an attorney?

A. No. I could ask him a couple of questions before I want to talk to you guys.

Q. You would like an attorney before—

A. No. I'm just saying, you know, you, know, if, you know, I would answer questions you all want to, if you all can have an attorney here.

Q. Well, that's—

A. It would take time?

Q. No. That's your right as I mentioned, you have the right to consult with an attorney and have an attorney present with you now, during this interview.

A. It don't matter. I'm going up the river anyway.

Q. Do you want an attorney?

A. No, it's okay.

Q. We could have an attorney—I could end this interview right now, Mr. Guzman, and have an attorney present.

A. How long would it take?

Q. I don't know.

A. Could I?

Det. Cipullo: It's whatever you want, whatever you feel.

Mr. Guzman: But I still could go through the interview?

Mr. Eng: It's whatever your—your attorney will advise you and as I mentioned before, again, if you cannot afford an attorney one will be appointed to represent you free of charge.

A. Go ahead, go ahead, go ahead, go ahead, go ahead.

Q. Are you saying you don't want an attorney?

A. No.

Q. Are you sure, Mr. Guzman?

A. Yeah.

Q. Because I can conclude this interview right now?

A. It don't matter.

Q. And I wouldn't ask you anymore questions?

A.  Don't matter, I talk to you.

Q.  I don't want to force you, Mr. Guzman.

A.  No, your not forcing me.

Q.  Do you want to speak to me with or without an attorney?

A.  I just speak to you without an attorney.  I can speak to you without an attorney.

Q.  Do you want an attorney here?

A.  No.

Q.  Are you sure?

A.  Positive.

Q.  Mr. Guzman, now that I advised you of your rights, do you want to talk to me about the death of Hector Avila Santiago?

A.  What do you want to know?

Q.  Well, do you want to talk to me about that first?

A.  Where do you want me to start, beginning, you know?

Q.  Are you willing to talk to me about the death of Hector Santiago, is that yes or no?

A.  Yes.  Any questions you want to know, I'm glad to answer.  (V1–6)[2]

Before custodial interrogation, suspects must be informed of their right to counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  This right may be waived, but if a suspect requests counsel, all interrogation must immediately cease until an attorney is present.  *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).  Questioning can only be resumed without an attorney if the defendant "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.  *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984).

Although doubts are to be resolved in favor of protecting this constitutional claim, *Miranda,* 384 U.S. at 444–445, 86 S.Ct. at 16, sometimes "an accused's asserted request for counsel may be ambiguous or equivocal." *Smith,* 469 U.S. at 95, 105 S.Ct. at 492.  In *United States v. Gotay,* 844 F.2d 971 (2nd Cir.1988), the Second Circuit held that "when a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel." *Id.* at 975.

■ Petitioner's questions in the dialogue quoted above, in which he asks how long it would take to get an attorney and whether he could have one there, are ambiguous as to whether clarification of his rights or the presence of an attorney is being requested.  In light of *Gotay,* it·was permissible for the Assistant to follow these ambiguous requests by the petitioner with questions designed to clarify whether or not he wanted an attorney.  That is exactly what the Assistant did.  In response to these further questions, petitioner was quite adamant that he did not want an attorney.  In fact, after the ambiguous set of responses, the Assistant asked petitioner eight times in a row whether he wanted an attorney, and each time petitioner clearly said no.  Only then did the Assistant proceed with the questioning.  Thus, petitioner expressly waived his right to counsel before any substantive questions were asked of him, and his videotaped confession was properly admitted against him at trial.

### III.  *Trial Adjournment*

The first day of trial consisted of the testimony of three short witnesses.  The court then adjourned the trial for the purpose ·of redacting the videotaped confession.  (T169–171.)

The next day the videotape was played for the jury.  The trial was then adjourned until the following day because the next witness was unavailable until then.  (T187–188.)

On the following morning, defense counsel reported to the court that his client wished to represent himself.  (T190–92.)  Petitioner then made the following application:

---

**2.**  Parenthetical numbers preceded by "V" refer to the videotape transcript.

THE DEFENDANT: And due to the fact that I don't know much about my case, I would like all of my records and some time to prepare myself for the case.

THE COURT: Your application is denied. We are in the middle of the trial. I am not going to grant you an adjournment at this time.

THE DEFENDANT: You deny me of my rights?

THE COURT: Deny you of the adjournment.

THE DEFENDANT: Deny me my records?

THE COURT: We are in the middle of the trial.

THE DEFENDANT: Your Honor—

THE COURT: Please be quiet. You have an experienced attorney. You want to represent yourself in this trial?

THE DEFENDANT: Yes and due to the fact that I don't know much about my case, I would like my records.

THE COURT: You want to go ahead now, I will let you go ahead now and let you represent yourself if you want.

THE DEFENDANT: Due to the fact that I don't know much about my records that I got in there.

THE COURT: You are not prepared to go ahead right now?

THE DEFENDANT: I am not prepared to go ahead.

THE COURT: Application denied. . . .

\*   \*   \*   \*   \*   \*

THE COURT: While we are waiting for the jury Mr. Guzman. Mr. Guzman, I want for the record, while we are waiting for the jury to come down, again, you have a right, after I conduct appropriate voir dire to represent yourself, but you don't have a right to adjourn the case, that's why I am denying your application because you said you are not prepared to go ahead right now. (T192–193.)

A defendant has a constitutional right to represent himself at trial.[3] *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In this case, petitioner was not denied that right. Petitioner's grievance is that he was denied a continuance that he said he needed in order to represent himself. A defendant does not have the right "to abuse the right to counsel for the purposes of disrupting or delaying the proceedings." *United States ex rel. Martinez v. Thomas*, 526 F.2d 750 (2nd Cir.1975). The trial judge is in the best position to understand the dynamics of the trial and to evaluate both the good faith of the applicant and the need for an adjournment. Therefore, the decision whether to grant an adjournment is within the sound discretion of the trial judge. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964); *United States v. King*, 762 F.2d 232, 235 (2nd Cir.), *cert. denied*, 475 U.S. 1018, 106 S.Ct. 1203, 89 L.Ed.2d 316 (1985). "To show an abuse of that discretion, the defendant must demonstrate that the court's denial of a continuance was arbitrary and substantially impaired his defense." *Id.*, 762 F.2d at 235. Petitioner has made no such showing. Petitioner has not offered any actual support for his contention that the denial of the requested continuance affected his ability to represent himself. Furthermore, petitioner has not shown any matter relating to his defense that additional time would have permitted him to bring forward.

## CONCLUSION

For the reasons discussed above, the petition for a writ of habeas corpus is denied.

SO ORDERED.

---

**3.** Petitioner also contends in this habeas corpus petition that this denial violated rights guaranteed by the New York State Constitution. However, the decision of the Appellate Division on pure questions of state law is conclusive. *Par-*

*ron v. Quick*, 869 F.2d 87, 89–90 (2nd Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 171, 107 L.Ed.2d 127 (1989). Therefore, I consider only petitioner's claims under the United States Constitution.