**UNITED STATES of America,**
**Appellee–Cross–Appellant,**

v.

**Thomas RYBICKI, Fredric Grae, and Grae, Rybicki & Partners, P.C., Defendants–Appellants–Cross–Appellees.**

**Nos. 00–1043L, 00–1055(CON), 00–1044(CON), 00–1052(XAP).**

United States Court of Appeals,
Second Circuit.

April 22, 2002.

Barry E. Schulman, Esq., Law Office of Barry E. Schulman, Esq. (Deborah A. Santelmo, Esq., on the brief), Brooklyn, NY, for Rybicki.

Ephraim Savitt, Esq., New York, NY, for Grae.

Herald Price Fahringer, Esq., Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria LLP (Erica T. Dubno, Esq., on the brief), New York, NY, for Grae Rybicki & Partners, P.C.

Daniel R. Alonso and Karen R. Sage, Assistant United States Attorneys (Loretta E. Lynch, United States Attorney for the Eastern District of New York, Peter A. Norling and David C. James, Assistant United States Attorneys, on the brief), Brooklyn, NY, for Appellee.

Present WALKER, Chief Judge, CABRANES and STRAUB, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of said district court be and they hereby are AFFIRMED.

Defendants-appellants Thomas Rybicki, Fredric Grae, and the law firm of Grae, Rybicki & Partners, P.C. appeal from the January 27, 2000 judgments of the district court, following a jury trial, convicting them of mail and wire fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 371 based on their practice of making payments through

middlemen or expediters to insurance company adjusters in order to settle personal injury lawsuits. To obtain more favorable settlement results, either as to timing or amount, appellants would pay a percentage of the settlement to the middlemen to split with the insurance companies' adjusters, notwithstanding that each of the insurance companies prohibited the acceptance of any gifts or fees by adjusters and required adjusters to report the offer of any gifts or fees. Appellants Grae and Rybicki were each sentenced to terms of imprisonment of one year and one day, three years of supervised release, a $20,000 fine, and a $1,150 special assessment. The appellants' surrender date was stayed pending this appeal. Appellant Grae, Rybicki & Partners, P.C. was sentenced to three years' probation, an $80,000 fine, and a $4,600 special assessment.

On appeal, appellants raise a host of legal and factual challenges to their convictions, which, briefly summarized, are that (1) appellants' practice of settling personal injury claims through an intermediary who shared his fee with the insurance company adjuster did not constitute a "scheme or artifice to defraud" in violation of 18 U.S.C. § 1341 because the government failed to prove actual or intended economic or pecuniary harm and because any breach of duty by the adjuster was not material; (2) the government failed to prove use of the mails sufficient to bring appellants' conduct within the mail fraud statute; (3) the prosecution exceeded the jurisdictional scope of the mail and wire fraud statutes; (4) the "honest services" fraud provision, 18 U.S.C. § 1346, is void for vagueness; (5) several of the district court's jury instructions were erroneous; (6) appellants' federal prosecution constituted a vindictive prosecution in light of the dismissal of a similar state case against appellants brought by the same prosecutor; (7) prosecutorial misconduct deprived appellants of a fair trial; (8) several evidentiary rulings by the district court were erroneous; and (9) the district court erred in enhancing appellants' sentences for the "use of a special skill."

The government has filed a cross-appeal arguing that the district court erred in failing to consider the middlemen's share of the payments made by appellants in calculating the value of the bribe to determine appellants' offense level under § 2B4.1 ("Commercial Bribery and Kickbacks") of the United States Sentencing Guidelines ("U.S.S.G." or "the guidelines").

By an opinion issued today in this case, we have addressed two of appellants' arguments: that the conduct they engaged in did not constitute a "scheme or artifice to defraud" as defined by 18 U.S.C. §§ 1341 and 1346 because there was no evidence of actual or intended economic or pecuniary harm and that § 1346 is void for vagueness. For the reasons discussed below, we find appellants' remaining challenges to lack merit. We also reject the government's claim raised in its cross-appeal.

■ Appellants argue that an adjuster's breach of a company's internal code of conduct cannot constitute mail fraud, and even if it could, then only if the breach is material to the transaction, which, they argue, was not the case here. We reject this argument. First of all, our cases have made clear that the breach of an internal code of conduct is sufficient to prove deprivation of honest services under § 1346 because the code of conduct constitutes proof of the duty owed by the employee to the employer. As we held in *United States v. Middlemiss*, 217 F.3d 112, 120 (2d Cir. 2000), by "violat[ing] his employer's rules regarding conflicts of interest and financial disclosures[, defendant] ... did not render all the services that a totally faithful employee would have provided [his employer],

and his actions were not in the best interests of his employer." Contrary to appellants' assertion, an employee need not owe a fiduciary duty to his employer for purposes of § 1346. *See United States v. Sancho*, 157 F.3d 918, 921 (2d Cir.1998) (*per curiam*) ("Section 1346 does not require the existence of a fiduciary relationship."). As for whether the breach must be material to the transaction, we need not address this argument because the case at hand satisfied any such requirement. The very reason bribes were paid to the adjusters was to obtain favorable results in settlements. The insurance companies, acting as reasonable entities, were bound to have considered the fact that their employees had a financial interest in settling cases to be important information with respect to those settlements. *See United States v. Dinome*, 86 F.3d 277, 280 (2d Cir.1996) (affirming jury instruction charging that a representation was material if "a reasonable person might have considered [it] important in making a decision"); *see also United States v. Rodolitz*, 786 F.2d 77, 80–81 (2d Cir.1986) (holding, in a case involving falsified insurance claims, that "the government needed to prove only that [defendant] employed a deceptive scheme intending to prevent the insurer from determining for itself a fair value of recovery").

■ Appellants next contend that the government failed to establish use of the mails sufficient to bring their conduct within the jurisdictional scope of the mail fraud statute. The mail fraud statute does not require that "[t]he scheme to defraud ... contemplate the use of the mails as an essential part of the scheme." *United States v. Altman*, 48 F.3d 96, 102 (2d Cir.1995). It is sufficient if the defendant's use of the mails is "at least incident to an essential part of the scheme." *Middlemiss*, 217 F.3d at 120. Thus, a convic-

tion will stand if the government establishes that the defendant " 'act[ed] with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended.' " *Altman*, 48 F.3d at 102–03 (quoting *Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954)) (alteration in original). We hold that this requirement was easily satisfied here given that the settlement checks issued by the insurance companies (i.e., the fruition of the scheme) were sent by mail. In addition, several of the bribes were invoiced and paid by mail. Finally, the appellants' mandatory filings with the New York State Office of Court Administration, which were adulterated to help conceal the fraud, were sent by mail. *See Schmuck v. United States*, 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (holding that mailing of title-registration forms satisfied mailing requirement because they contributed to success of the scheme).

■ Appellants argue that their prosecution under the mail- and wire-fraud statutes violated principles of federalism and the Tenth Amendment. These claims are frivolous. Having proved the elements of mail and wire fraud, this case rests squarely within the group of cases that have prosecuted similar private sector frauds under federal law, and appellants' conduct is precisely the type of misuse of the mails and wires the statutes were meant to address. *See, e.g., United States v. Von Barta*, 635 F.2d 999, 1005 (2d Cir.1980). In a similar vein, appellants argue that the conduct at issue here was not illegal under New York state law and, therefore, could not form the basis of federal charges. We note that both the trial and appellate courts that were involved in the state court proceedings initially brought against the appellants and others based on the same

scheme found that the type of conduct at issue here did violate state law. *See New York v. Wolf,* 284 A.D.2d 102, 726 N.Y.S.2d 83, 84 (N.Y.App.Div.2001) (holding that similar conduct by co-defendant of Grae and Rybicki "satisfie[d] the elements of commercial bribery ... and scheme to defraud"), *leave to appeal granted,* 96 N.Y.2d 926, 732 N.Y.S.2d 644, 758 N.E.2d 670 (2001); *People v. Reynolds,* 174 Misc.2d 812, 667 N.Y.S.2d 591 (N.Y.Sup.Ct.1997) (denying motions to dismiss indictment charging multiple defendants—including Grae and Rybicki—with commercial bribery and scheme to defraud on grounds that scheme, if proven, would satisfy all required elements of both statutes). In any event, it is well settled that a fraudulent scheme need not violate state law in order to support a federal mail or wire fraud conviction. *See United States v. Sawyer,* 85 F.3d 713, 726 (1st Cir.1996); *see also McNally v. United States,* 483 U.S. 350, 377 n. 10, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (Stevens, *J.,* dissenting).

Appellants next challenge several of the district court's jury instructions, specifically, the instructions given on the issues of "reasonably foreseeable" harm, "constructive trust," "breach of fiduciary duty," and "honest belief." The parties dispute whether appellants preserved their objections for appeal. We need not resolve this dispute because we find that appellants' claims lack merit even under the less-stringent standard we apply to preserved objections. Under this standard, we review claims of error in jury instructions *de novo* and will grant a new trial only where the jury has been misled as to the correct legal standard or inadequately informed of the law and where the error is not harmless. *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 115–16 (2d Cir.2000). An error is harmless "if the court is convinced that the error did not influence the jury's verdict." *Id.* at 116.

■ The district court instructed the jury that in order to convict the appellants, they had to find that it was "reasonably foreseeable [to the appellants] that the companies in question might suffer economic harm as a result of the breach of the employee's duty." As discussed more fully in the opinion we issue today in this case, this instruction accurately reflected the law and, therefore, was not erroneous.

■ The district court also charged the jury that among an employee's duties to its employer is an obligation to account for secret profits. Appellants argue that this was error, relying on *United States v. Miller,* 997 F.2d 1010 (2d Cir.1993). *Miller,* however, was not an honest services case, but an ordinary property fraud. We held that the government had failed to establish the deprivation of a property interest because a constructive trust was not a property interest. *Id.* at 1019. Thus *Miller* is inapposite because the issue here was whether the employer was deprived of its right to honest services. Indeed, the *Miller* court stated that "[i]t is settled law that an agent owes his principal a duty of loyalty, and must account for any profits realized in connection with his representation of the principal." *Id.* at 1018. There was no error in the district court's charge.

■ Appellants also challenge the district judge's instructions concerning the claims adjusters' duty of loyalty to their employers, specifically her instruction that the jury need not find that a fiduciary relationship existed and also that each of the insurance companies "had a strict prohibition against claims adjusters [deriving] any personal gain from settlements." These claims lack merit. As discussed above, § 1346 does not require proof of a fiduciary duty. *See Sancho,* 157 F.3d at 920–21. In addition, the company codes of conduct did strictly prohibit employees

from deriving personal gain from the settlements. Again, we find no error in this instruction.

■ Finally, appellants rely on *United States v. Rossomando*, 144 F.3d 197 (2d Cir.1998), to argue that the district court's instruction on good faith warrants reversal. The district court, after instructing the jury about the specific intent the government was required to prove and that good faith is a defense, continued:

No amount of honest belief on the part of the defendant, if such a belief existed, that the venture would ultimately succeed in such a way that no one would, in the end, suffer any loss or be deprived of the intangible right of honest services will excuse fraudulent conduct by the defendant if you conclude that such omissions were made with the specific intent to deprive another of the intangible right of honest services, even in the short term.

In *Rossomando*, this court reversed a similar charge under a plain error standard on the ground that it might be prejudicially confusing because it might mislead the jury into convicting even if they found that the defendant did not intend to harm the victim. *Rossomando*, 144 F.3d at 199–201. The charge here is distinguishable from that given in *Rossomando* because appellants' assertion that they never intended any financial loss to the insurance companies created a factual predicate for the instruction and because the instruction here was modified to clarify that the jury had to find that the appellants intended to deprive the insurance companies of honest services. *See United States v. Koh*, 199 F.3d 632, 641 (2d Cir.1999) (upholding similar instruction on grounds that there was a factual predicate for it and the language had been modified so that it "clearly informed the jury that they could not convict [the defendant] unless he intended to

cause loss to someone") (internal quotation marks omitted) (alteration in original). Accordingly, we find that there was no error.

■ Among several challenges to the district court's evidentiary rulings, appellants contend that the district court erred in admitting the "McGrath Cards" against defendant Grae under the business records exception and Quigley's testimony under Fed.R.Evid. 404(b), and, further, that this evidence was unduly prejudicial to co-defendant Rybicki. "[W]e review evidentiary rulings for abuse of discretion," *United States v. Sewell*, 252 F.3d 647, 650 (2d Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 382, 151 L.Ed.2d 291 (2001), and find no such abuse here. The district court's decision to admit the McGrath Cards was properly based on its findings that they were created by McGrath, a person with knowledge, in the regular course of business; they were authenticated by Quigley, who was familiar with McGrath's system and had frequently relied on the cards themselves; and they constituted records whose accuracy was essential to the success of the criminal venture, thus providing adequate indicia of trustworthiness and reliability to warrant their admission.

■ Equally without merit is appellants' argument that Quigley's testimony concerning the five to ten transactions he conducted with Grae in the early 1980's when he was an insurance adjuster was improperly admitted under Fed.R.Evid. 404(b), and that even if properly admissible under 404(b), should have been excluded under Rule 403 because its probative value was outweighed by the prejudice it caused to Grae and Rybicki. We agree with the district court's assessment that Quigley's testimony about the earlier transactions was relevant to the issue of Grae's knowledge and intent with respect to payments to adjusters, as well as to

Grae's later relationship with Quigley as a middleman. Thus, the testimony was properly admitted given appellants' refusal to stipulate to the issues of knowledge and intent.

■ As for spillover prejudice to Rybicki, the district court specifically instructed the jury that they could consider the McGrath Cards and Quigley's testimony only as evidence of Grae's relationships with McGrath and Quigley and that the jurors could not consider this evidence against either Rybicki or the firm. This limiting instruction was sufficient to prevent any prejudicial spillover.

■ The last two issues we address concern the sentences imposed upon appellants by the district court. Appellants object to the district court's imposition of a two-level enhancement in their sentences for their use of a "special skill" in the commission of the crime pursuant to U.S.S.G. § 3B1.3. We must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). Here, the district court agreed with the government that the appellants' skills as attorneys were integral to the fraud scheme. The district court was particularly persuaded by this court's decision in *United States v. Fritzson*, 979 F.2d 21, 22 (2d Cir.1992) (*per curiam*), where we upheld application of the enhancement for the defendant's use of accounting skills, finding that "[t]he fact that the same offenses could have been committed by a person without the defendant's special training is immaterial; a § 3B1.3 adjustment is proper where the defendant's special skills increase his chances of succeeding or of avoiding detection." We agree with the government that here, although the other conspirators need not have been lawyers, it was necessary to the scheme that the appellants were lawyers who represented personal injury clients. We

therefore affirm the district court's enhancement.

■ Finally, we address the government's argument that the district judge erred in calculating the amount of the bribes for sentencing purposes under U.S.S.G. § 2B4.1 because she did not include the amount of money paid to the middlemen, but only included the amount paid by the middlemen to the adjusters. We are not persuaded by the government's argument, which is not supported by the primary case upon which it relies. In *United States v. Sutton*, 13 F.3d 595, 597 (2d Cir.1994) (*per curiam*), while the court did state that "the bribes ... paid to Sutton usually ranged from $750 to $1200, including the premiums paid to the middlemen," this fact had little bearing on the holding affirming the district court's calculation. In fact, the district court ultimately applied a much lower amount of $250 per bribe. *Id.* In affirming the district court's calculation, we observed that "[t]he commentary to § 2F1.1 specifies that loss 'need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information.' " *Id.* at 599 (quoting U.S.S.G. § 2F1.1, cmt. n. 8 (1993)). We concluded that "the district court's findings will not be disturbed unless clearly erroneous." *Id.* (internal quotation marks omitted). Here, the district court rejected the government's calculation method, determining that "it is appropriate in light of all the factors to strictly construe this term bribe and to give the defendants the benefit of that interpretation." We fail to see how the district court's calculation was either unreasonable or clearly erroneous.

We have carefully considered all of appellants' remaining arguments and find them to lack merit. Accordingly, for the

reasons set forth above, the judgments of the district court are hereby AFFIRMED.